Gabriel GERO, Plaintiff,

v.

The SEVEN–UP COMPANY, J. Walter Thompson Co., New York Seven-Up Bottling Co., Inc., and CBS, Inc., Defendants.

No. 75 C 903.

United States District Court,
E. D. New York.

March 24, 1982.

Howard M. Sommers, Galpeer, Altus Karp & Beckerman, New York City, for plaintiff.

John M. Keene, III, Coudert Brothers, New York City, for defendants.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

This action was commenced by the filing of plaintiff Gabriel Gero's ("Gero") complaint on June 12, 1975, alleging infringement by defendants of two copyrighted artworks. When this claim was first filed, Gero claimed an infringement of both his "Indian Goddess" drawing and his "Snow White" sketch. The "Snow White" claim has been withdrawn.[1] Thus, the issues of

---

1. The plaintiff's second piece of artwork represents his version of the fairy-tale figures Snow White and the Seven Dwarfs. Snow White is shown at the head of the line of dwarfs, leading them down a path toward a distant fairy castle. She holds a bottle of Seven-Up upright in one

concern to this court involve solely the "Indian Goddess" drawing.

The named defendants in the original complaint are the Seven-Up Company, a Missouri corporation; the New York Seven-Up Bottling Company, an Illinois corporation doing business in the State of New York as the local distributor of defendant Seven-Up's carbonated soft drink product; and J. Walter Thompson Company, a Delaware corporation representing Seven-Up in the advertising and promotion of its product. CBS, Incorporated, who is alleged to have aired the infringing commercial on WCBS–TV, was later joined as co-defendant by this court's order of June 5, 1978.

Gero's "Indian Goddess" drawing, the subject of this action, is a cartoon-style drawing of a female figure, seated atop a three-step podium. At the base of this podium, and flanking the seated figure, are free-standing fountains. The central spout of these fountains resembles the top of a soda bottle, and it would appear that soda is the substance spouting therefrom. The female figure is scantily clad in a bejewelled bra-top and bikini bottom, a loincloth falling between her legs. She is seated in the lotus position traditional in the practice of Yoga, a branch of Hinduism—that is, knees bent to the side and feet tucked under the opposite leg. The most distinctive feature of this figure is that she has six arms, as do several of the gods and goddesses in the Hindu pantheon, of which she is presumably a representative member. On each arm she wears a bracelet at the wrist, and a bracelet on each upper arm near the shoulder. In each hand she is holding upright a capped-bottle of the defendants' product, the carbonated soft drink Seven-Up. A seventh bottle perches on the figure's head, atop a bejewelled cap or headdress. She also wears several rows of beaded necklaces, and a broad smile. Her eyes are slanted upwards, and there is a diamond-shaped mark or jewel on her forehead between her eyes, as is characteristic of an Indian woman. A squared-off cartoon balloon containing the Seven-Up logo floats near her head and clouds are floating behind her.

Plaintiff obtained a certificate of registration from the Copyright Office for this artwork on January 19, 1961. He thereafter submitted this artwork to the Seven-Up Company of New York, Seven-Up's main office in St. Louis, Missouri, and the J. Walter Thompson advertising agency who represented Seven-Up, none of whom expressed interest in using plaintiff's work to advertise Seven-Up.

Gero's complaint asserts that in 1972 the defendants commenced the use of his copyrighted artwork in television commercials and other advertising media. In support of this assertion he has submitted the affidavits of six persons who claim to have seen a Seven-Up commercial making use of his artwork in the spring of 1971, the affidavits of nine other persons who claim to have seen it between 1972–1975, and twenty-seven others who in *pro forma* affidavits claim to have seen the work at some time in the past few years. He does not claim to have ever viewed the alleged infringing commercial himself.

In their answer, defendants denied the existence of such a commercial, and defendants invited plaintiff to a screening of all Seven-Up commercials produced by the J. Walter Thompson agency for Seven-Up and broadcast within the time period allowed by the copyright statute of limitations—that is, within three years of plaintiff's filing of his complaint on June 12, 1975 (17 U.S.C.

hand and the Seven-Up logo, enclosed in a squared-off cartoon balloon, issues from her mouth. All claims against defendants in regard to the infringement of plaintiff's copyrighted artwork depicting "Snow White and the Seven Dwarfs" are hereby barred from further consideration for failure to set forth sufficient evidence to rebut defendants' motion.

Although the court does not address itself to this issue at this time, it is unlikely that plaintiff's copyright for his "Snow White" drawing is valid. Although the story of a princess who is befriended in the forest by dwarfs is an old German fairy tale, it was Walt Disney who named her "Snow White" and fixed the number of dwarfs at seven. If anything, it would appear that the plaintiff is infringing the copyright of Walt Disney Associates.

§ 115).[2] Plaintiff could find no commercial at the screening resembling his artwork.

In response to defendants' subsequent motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings, this court denied the motion, and permitted further pretrial discovery, as long as it was specific and limited in scope. Both parties stipulated to this on December 9, 1977, and on the basis of this stipulation, defendants arranged for the depositions of the custodian of Seven-Up's television commercials, as well as that of J. Walter Thompson's account executive for Seven-Up for the time period in question. At this time plaintiff sought to revoke his stipulation to limit discovery, alleging fraudulent inducement of his signature. A Special Master, who was appointed to oversee the discovery process, recommended the court's acceptance of the stipulations limiting discovery to the issue of the existence of the alleged infringing commercial. The defendants' deponents confirmed their contention that Seven-Up had never produced such a commercial. But plaintiff, unhappy with these results, sought to expand discovery once more. The court, however, stood behind the recommendation of the Special Master and all discovery to date has proven fruitless in the search for a copy of the commercial.

Defendants are now before this court on a motion for summary judgment, pursuant to Fed.R.Civ.P. 56(b), alleging that the failure of the plaintiff to produce evidence sufficient to raise an issue of material fact mandates a dismissal of the action. The granting of a motion for summary judgment in a copyright case, as indeed in any case, has serious repercussions. In short, the court is asked to deny the plaintiff his day in court, and his opportunity to present his case to a jury, the trier of fact. *See Arnstein v. Porter,* 154 F.2d 464 (2d Cir. 1946). Yet it was in recognition of the times when there are no facts to be tried and when all issues may be resolved as a matter of law that the Supreme Court saw

fit to promulgate, and Congress to approve, Rule 56 of the Federal Rules. *See Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1972); *Dressler v. M. V. Sandpiper,* 331 F.2d 130 (2d Cir. 1964).

In general, to establish a claim of copyright infringement, a plaintiff "must show ownership of a valid copyright and copying by the defendant." *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir. 1977) (quoted in *Warner Bros. v. American Broadcasting Co.,* 654 F.2d 204, 207 (2d Cir. 1981)). Although the defendants are not challenging either the questionable validity or ownership of Gero's copyright, they do challenge Gero's ability to prove that the defendants copied his work in the "phantom" commercial. The case law in the copyright field is very well entrenched, and difficulties arise only when the facts in a given case do not fit squarely into one of the circumscribed categories that have been established. This is a case which fails to fit within any of those categories because there is no concrete proof of the existence of the allegedly infringing commercial.

It is quite clear that "evidence of copying is ordinarily unavailable," *Warner Bros. v. American Broadcasting Co., supra,* 654 F.2d at 207, and thus, "copying may be inferred where a plaintiff establishes that the defendant had access and that the two works are substantially similar." *Id. See Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra; Reyher v. Children's Television Workshop,* 533 F.2d 87 (2d Cir. 1976), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). Moreover, it is quite crucial to a litigant's claim that he prove that the essence of his idea, not the idea alone, has been copied since "there can be no copyright on an 'idea' itself but only on the tangible 'expression' of the idea." *Uneeda Doll Co. v. P & M Doll Co.,* 353 F.2d 788, 789 (2d Cir. 1965); *see Reyher v. Children's Television Workshop, supra,* 533 F.2d at 90; 17 U.S.C. § 102(b). Moreover, even if the alleged infringer's work is clearly

---

**2.** Any commercial shown previous to that time would not fall within the statute of limitations and would of course be time-barred. *See* 17 U.S.C. § 115.

similar but to elements which are non-copyrightable, there is no cognizable claim absent wholesale usurpation of plaintiff's work. *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979–80 (2d Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980) (affirming the summary judgment in a copyright infringement case concerning two versions of the story of the destruction of the dirigible "The Hindenburg" a matter of historical fact); *Alexander v. Haley*, 460 F.Supp. 40 (S.D.N.Y.1978) (defendant's book *Roots* did not infringe plaintiff's novel *Jubilee* and the pamphlet recounting how she came to write *Jubilee*, since the works are alike only in respect to subject matter, folk tales, and other material not original with the plaintiff; motion for summary judgment granted); *Musto v. Meyer*, 434 F.Supp. 32 (S.D.N.Y.1977), *aff'd*, 598 F.2d 609 (2d Cir. 1979) (defendant's novel, *The Seven Per Cent Solution* held to be similar to plaintiff's article, "A Study in Cocaine: Sherlock Holmes was treated by Sigmund Freud" only in respect to the idea that Sherlock Holmes was treated by Sigmund Freud for his cocaine addiction and resulting delusions of pursuit by the arch-villain, Professor Moriarty; judgment on the pleadings granted because no actionable infringement can be found in the copying of an idea or ideas).

Assuming the commercial did or does exist and was based in whole or in part on Gero's cartoon, these factors alone would be insufficient in an infringement claim. History abounds with examples of artworks that are built around the same or similar idea or subject matter. Copyright protection was never meant to inhibit the free flow of ideas; on the contrary, its goal is to encourage the dissemination of ideas by protecting the embodiment or expression of an idea in a creative work, and reserving rights in it to that creator. This goal is often realized when a second work makes use of the idea or subject matter of the first. And that first work in turn is free to make use of all preceding prototypes in the history of ideas. For instance, in *Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir.), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1930), Judge Learned Hand affirmed the District Court's dismissal of a case concerning the alleged infringement of plaintiff's play, "Abie's Irish Rose." The play deals with a clandestine marriage of a Jewish boy and an Irish girl in the face of strong parental hatred for the other ethnic group. The defendant's play, "The Cohens and the Kellys," similarly involved a clandestine marriage of an Irish boy and a Jewish girl, also accompanied by chauvinistic antagonism on the part of their parents. In both plays, the secret marriage is revealed, the parents are at first furious, but finally reconciled when their grandchildren make their appearances. Despite the obvious structural and thematic similarities in the plays, these similarities, Judge Hand opined, are in respect to non-copyrightable elements of the whole. The content of plaintiff's play "went to some extent into the public domain . . . A comedy based upon conflicts between Irish and Jews, into which the marriage of their children enters, is no more susceptible of copyright than the outline of Romeo and Juliet." *Id.* at 122; *see Musto v. Meyer, supra*, 434 F.Supp. at 36; *Fuld v. National Broadcasting Co.*, 390 F.Supp. 877, 878 (S.D.N.Y.1975).

Turning to the issues in the instant matter it is quite clear that the concept of a six-armed Indian female goddess is not unique to the plaintiff. Multi-limbed gods and goddesses abound in Indian religious myth and folklore. Accordingly, the concept or idea of such a figure belongs to no one. The concept or idea of a six-armed figure holding bottles of Seven-Up (plus one on her head to match the "7" in the product's name) likewise belongs to no one. *See Hoehling v. Universal City Studios Inc., supra.* The plaintiff's drawing of such a figure belongs to him, and so do all rights in that drawing—but not in the subject matter of that drawing. There is no question of access in this case as both sides concede that plaintiff sent his artwork to defendants in 1961, at which time they viewed and rejected it. But it would be contrary to the purposes of the copyright law were this to mean that defendants, having viewed plain-

tiff's version of this idea, could never create their own version of it. Defendants were free to produce a commercial using this idea as "the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." *Reyher v. Children's Television Workshop, supra*, 533 F.2d at 90; *see Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Baker v. Selden*, 101 U.S. 99, 25 L.Ed. 841 (1879).

■ While the issue of substantial similarity is usually a question of fact for the jury, *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966), obstacles persist which the plaintiff has not overcome that preclude the plaintiff from making out a prima facie case of copyright infringement and thus avoid summary judgment. After six years of discovery, depositions, stipulations and the report of a Special Master, the plaintiff has failed to produce reliable evidence of the existence of the alleged infringing commercial. Thus, comparison of plaintiff's and defendants' works for purposes of discerning substantial similarity, the very heart of a copyright infringement case, *see O'Neill v. Dell Publishing Co., Inc.*, 630 F.2d 685, 690 (1st Cir. 1980), is impossible. *See Malden Mills, Inc. v. Regency Mills, Inc.*, 626 F.2d 1112, 1113 (2d Cir. 1980) (*quoting Ideal Toy Corp. v. Fab-Lu Ltd., supra*, 360 F.2d at 1022); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). Instead the plaintiff in opposition to the motion has produced 27 affidavits whose language provides exemplars of precisely the sort of material that the Copyright Act and a long line of case law exclude from protection. Each and every affidavit in the group

alleging to have seen the infringing commercial described the commercial as having, "the identical subject matter" as plaintiff's artwork. Some include a sketchy description of the commercial, usually no more than, "a multi-armed figure ... holding and pouring bottles of the soft drink Seven-Up." Not one of these 27 affiants observed the figure with sufficient thoroughness to include in their description the figure's attire, position, or even its gender; not one describes objects in the background or foreground of the scene. Other than a viewing outside the statute of limitations, not one includes the time, date, place or channel of the television viewing. Not one provides this court with anything resembling a full and accurate description of the alleged infringing commercial upon which a jury could base a finding of substantial similarity with the plaintiff's copyrighted artwork.[3]

■ In a motion for summary judgment, all allegations must be considered in a light most favorable to the non-moving party. Accordingly, we read plaintiff's affidavits as true, but insufficiently specific so as to raise genuine issues of fact. The rule of *Arnstein v. Porter, supra*, that summary judgment in copyright cases is inappropriate where any issue of fact is at all possible, has been modified by more recent cases requiring the non-moving party to present non-conclusory, specific evidence of a factual issue resolvable only at trial. *See Heyman v. Commerce Industry Insurance Co., supra*; *see also O'Neill v. Dell Publishing Co., Inc., supra*. This the plaintiff has failed to do. Such evidence as the fact that the J. Walter Thompson agency no longer represents Seven-Up, which plaintiff sets forth in his affidavit to defeat defendants'

---

**3.** The earlier affidavits dating to the viewing on May 22, 1971 are of necessity time-barred. This action was commenced on or about June 12, 1975 and the court may only consider acts of copyright infringement subsequent to June 11, 1972, and not before. The earlier determination by this court to extend discovery was in an effort to afford the plaintiff every opportunity to diligently pursue his claim. But there is no way in which a claim going back to May 22, 1971 can be entertained. No explanation for the plaintiff's delay in bringing this action has

ever been provided, except that, four years after their supposed viewing of plaintiff's artwork on television plaintiff's parents suddenly remembered the name of the movie they were watching when the infringing commercial appeared, as well as the date, time and television channel.

For the same reason, all claims against defendant CBS, Inc., whose only connection to this lawsuit was the charge that the commercial was seen on CBS–TV on May 22, 1971, are hereby dismissed.

motion for summary judgment, is not circumstantial evidence: it is no evidence at all. *See First National Bank v. Cities Services*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (sustained defense motion for summary judgment where the plaintiff produced no probative evidence to counter defendants' motion). In the absence of strong counter-arguments, beyond the initial allegations of the complaint, plaintiff could not be allowed to proceed to trial "with the hope that something can be developed at trial in the way of evidence." *Id.* at 290, 88 S.Ct. at 1593.

Were this court to find that plaintiff's material in opposition to defendants' motion was sufficient, there would still remain the problem of substantial similarity, and in the absence of the existence of the commercial itself, the most that can be said is that defendant infringed plaintiff's idea for a Seven-Up commercial featuring a six-armed goddess holding and pouring bottles of Seven-Up. There is no doubt but that such a copying, of the plaintiff's idea for a Seven-Up commercial featuring a six-armed goddess holding bottles of Seven-Up, is not infringement under the Federal Copyright Law.

*Conclusion*

All claims against defendants in regard to an infringement of plaintiff's copyrighted artwork depicting a six-armed Indian goddess holding bottles of Seven-Up dating prior to June 11, 1972, are hereby barred from consideration for failing to come under the Statute of Limitations imposed by the Federal Copyright Law, 17 U.S.C. § 115. *See* Footnote 1, *supra.*

All claims against defendants in regard to infringement of plaintiff's artwork depicting a six-armed Indian goddess holding bottles of 7–Up, such acts of infringement occurring subsequent to June 11, 1972, are hereby dismissed.

Plaintiff has failed to produce evidence at which a jury could make a finding of substantial similarity between plaintiff's artwork and defendants' alleged work. The affidavits he has amassed are in no way probative of the existence of the commercial, and are not sufficient to rebut defendants' motion to dismiss. *First National Bank v. Cities Services, supra.* The most these affidavits do is suggest the possibility that a similar commercial existed.[4] But in the absence of the actual commercial film with which a jury could compare the plaintiff's artwork, the most that could be determined at trial is that if it did exist then, *arguendo,* it covered the same idea or subject matter as did plaintiff's cartoon. Since the copyright law is designed to protect not ideas, but only the expression of an idea, there is no way in which the defendants have infringed the plaintiff's work.

Accordingly, the action is dismissed in all respects. SO ORDERED.

---

**4.** During the time period in question, 1972–75, M&M candies aired a television commercial featuring a live model, not a cartoon, who appeared to have six arms, holding M&M chocolate candies in each to illustrate the candy's slogan, "The milk chocolate melts in your mouth, not in your hands."