Bob GRAHAM, Governor of the State of
Florida, and David H. Pingree, Secre-
tary of the State of Florida, Department
of Health and Rehabilitative Services,
Plaintiffs,

v.

Richard S. SCHWEIKER, Secretary of
The Department of Health and
Human Services, Defendant.

No. 82–1057–Civ–CA.

United States District Court,
S. D. Florida.

June 2, 1982.

Asst. U. S. Atty. Ana Barnett, Miami, Fla., for defendant.

Asst. City Atty. Donna Stinson, for plaintiffs.

## MEMORANDUM OPINION AND ORDER DENYING PRELIMINARY INJUNCTION

ATKINS, Chief Judge.

The Governor of the State of Florida, Bob Graham, and the State's Secretary of Health and Rehabilitative Services (HRS), David Pingree, bring this action to enjoin the United States Secretary of Health and Human Services (HHS) from enforcing a regulation that terminates funds previously available under the provisions of the Refugee Act of 1980, 8 U.S.C. § 1521, *et seq.* In open court on May 29, 1982, the Court denied the plaintiffs' motion for a preliminary injunction. This Order sets forth the reasons for the Court's ruling.

## I. BACKGROUND

The Refugee Act of 1980 was designed to aid settlement of refugees in the United States. Among other things, the Act authorizes the Secretary of HHS to provide financial assistance to states "for up to 100 per centum of the cash assistance and medical assistance provided to any refugee during" the first thirty-six months he is in the country. 8 U.S.C. § 1522(e)(1). When the Act was first implemented, the Secretary promulgated regulations providing for reimbursement to the states for benefits provided to refugees for the full thirty-six month period possible under the Act. On March 12, 1982, however, the Secretary published amended regulations effectively limiting benefits to eighteen months, except when the refugee would be otherwise eligible for benefits under a state's general assistance program, in which case the thirty-six month maximum would still apply. The

amended regulations were intended to take effect on April 21, 1982 despite section 553(d) of the Administrative Procedure Act which generally requires a minimum of thirty days between publication and implementation of a rule. Because Florida's general assistance program provides benefits only to limited categories of disabled persons, most refugees residing in the state are eligible for only eighteen months of assistance under the new regulations.

Florida's plan for administering the Refugee Act was adopted in reliance on the old regulations providing thirty-six months of assistance. After the new regulations were published, Florida began proceedings to amend its own regulations to conform with the new federal guidelines, but according to the plaintiff Florida's own Administrative Procedure Act, Fla.Stat. § 120.50 *et seq.,* prevents the State from implementing any new regulations prior to July 1, 1982. A quick review of Florida's A.P.A. does not support the plaintiffs' contention. The Act permits adoption of rules after only twenty-one days' notice and in emergencies even this requirement can be waived. Fla.Stat. §§ 120.54(1)(b), (9)(a). In any event, plaintiffs maintain that the State's new regulations will not be effective until July and as a result the State has been forced to pay assistance to refugees during April and May without federal reimbursement. The next payment is due on June 1, but the State does not intend to pay it.

## II. STANDING

At the outset it should be noted that this action is being prosecuted by the Governor and the Secretary of HRS, and not by the State or HRS itself. It is the State that is allegedly losing the funds due under the Refugee Act, not the Governor or the Secretary, and it is the State that would be entitled to any reimbursement that may be ordered. The defendant is willing to concede however, at least for this motion that plaintiffs may assert the rights of the State of Florida. While standing to sue generally cannot be conferred by stipulation, for purposes of resolving the motion for prelimi-

nary relief, the Court will assume plaintiffs can properly represent whatever interests the State may have.

■ This still does not totally resolve the standing question because plaintiffs' claims encompass a wide range of injuries to parties other than the State itself. For example, plaintiffs allege that the new regulations violate the rights of refugees to equal protection and to travel freely within the United States. Generally a litigant may assert only his own rights and not the rights of others. *See, e.g. United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) (state officials did not have standing to assert rights of private citizens). While there are numerous exceptions to this general rule, plaintiffs offer no explanation of why it should not apply to this case. The injured refugees are able to bring suit for themselves, and there is no reason to confer third party standing on the State or its officials.

■ Plaintiffs also allege that the new regulations will have a drastic effect on the health and welfare of the State's citizens. Such allegations implicate the *parens patriae* interests of the state but it is well established that such interests may not be asserted against the federal government or its officials. *See, e.g., Pennsylvania v. Kleppe*, 533 F.2d 668 (D.C. Cir. 1976), *cert. denied sub nom, Pennsylvania v. Kobelinski*, 429 U.S. 997, 97 S.Ct. 485, 50 L.Ed.2d 584 (1977). As the Supreme Court explained in *Massachusetts v. Mellon*, 262 U.S. 447, 485–86, 43 S.Ct. 597, 600, 67 L.Ed. 1078 (1923), "it is no part of [the State's] duty or power to enforce [its citizens'] rights in respect of their relations with the Federal Government. In that field it is the United States, and not the State, which represents them as *parens patriae*...."

■ The State, of course, does have standing to seek redress for the injury caused by the new regulations to its own treasury. A state always has standing to sue to protect its own proprietary interests. *See, e.g. Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968); *Alabama v. Tennessee Valley Authority*, 636 F.2d 1061 (5th Cir. 1981). But the scope of the State's standing is limited to seeking recovery of funds and avoiding future payments; it does not include the right to sue on behalf of the State's refugees or citizens.

## III. PRELIMINARY RELIEF

The requirements for a preliminary injunction are well established. The movant must demonstrate: (1) a substantial threat that he will suffer irreparable harm if an injunction is not issued; (2) a substantial likelihood that he will prevail on the merits of the claim; (3) that the threatened injury to the movant outweighs any injury an injunction will cause to the opponent; and (4) that granting the injunction is not against the public interest. *See, e.g. Southern Monorail Co. v. Robbins & Myers*, 666 F.2d 185 (5th Cir. 1982).

### A. Irreparable Injury

■ Plaintiffs allege three injuries in their complaint: (1) the loss of several million dollars from the State treasury; (2) the harm to refugees who will be left without assistance, and (3) the harm to the general welfare of the State that will result if thousands of refugees are left without assistance. As explained above, neither the named plaintiffs nor the State have standing to seek redress for the latter two injuries.

The only injury plaintiffs arguably have standing to raise—loss of funds from the State treasury—is clearly not irreparable. The loss of money is never irreparable unless recovery of the money is impossible. *See, e.g. Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (injury is irreparable only if it cannot be undone through monetary remedies). *Compare Productos Carnic, S.A. v. Central American Beef & Seafood Trading Co.*, 621 F.2d 683 (5th Cir. 1980) (injunction may issue to protect ability to procure a damage remedy). If, as plaintiffs claim, the funds were improperly withheld, plaintiffs can be fully compensated either through an action

for damages under the Tucker Act * or by seeking a writ of mandamus to compel the defendant to release the withheld funds. *See United States v. Commonwealth of Pennsylvania*, 533 F.2d 107 (3d Cir. 1976) (no irreparable injury where withholding of medicare funds could be remedied by order mandating release).

Even assuming plaintiffs have standing to seek relief on behalf of the State's refugees and citizens, it is by no means clear that the injury to these parties is beyond the plaintiffs' power to remedy. The injury to these parties is as much a result of the plaintiffs' actions as it is the defendant's. The State has already made two payments without federal reimbursement and the plaintiffs offer no plausible explanation for why further payments are impossible. If plaintiffs truly desire to avoid the alleged injury to the State's refugees and citizens, they have an obvious alternative available to them: continue to make the assistance payments themselves and then seek reimbursement from the federal government.

Plaintiffs also have another option available to them: they can amend the State's general assistance program to make more persons eligible for aid. The federal government is obligated under the new regulations to reimburse states for a full thirty-six months of assistance to refugees if the refugees would otherwise be eligible for benefits under a state's general assistance program. If Florida amends its program to meet the new guidelines, the State's refugee population can continue to receive compensation for the full thirty-six months. Since it is within the State's power to avoid the alleged injury, the injury is not irreparable. *See, e.g. United States v. Pennsylvania*, 533 F.2d 107 (3d Cir. 1976) (no irreparable injury where state was able to obtain matching funds from United States by amending state's own medicare program).

### B. The Merits

Plaintiffs also have not demonstrated any likelihood of success on the merits. In fact,

the majority of plaintiffs' objections to the amended regulations were squarely rejected in two persuasive decisions from other federal districts.

Plaintiffs' first objection to the new regulations—that they are invalid because they were not published at least thirty days before they became effective, as required by 5 U.S.C. § 553(d)—was rejected in *Ngou v. Schweiker*, 535 F.Supp. 214 (Dist. D.C. 1982). Although the Court found that the regulations had been passed in violation of § 553(d), it did not declare the regulations invalid but instead simply postponed their effective date until May 1, 1982. The Court's conclusion is consistent with several other decisions holding that the failure to comply with the publication requirement of Section 553(d) does not render a regulation invalid but merely postpones its effectiveness. *See, e.g. Rowell v. Andrus*, 631 F.2d 699, 704 (10th Cir. 1980); *United States v. Gavrilovic*, 551 F.2d 1099 (8th Cir. 1977); *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478, 482 (2d Cir. 1972). More than thirty days have now passed since the amended regulations were published on March 12, and Section 553(d) no longer presents any obstacle to the regulations' validity.

Next, plaintiffs urge that the regulation is invalid because it exceeds the scope of authority delegated to the Secretary under the Refugee Act. Specifically, plaintiffs contend that the regulation fails to treat all refugees uniformly as allegedly required by Section 1521 of the Act. This contention was also rejected by the Court in *Ngou*:

> Plaintiff further contends that the following statement of purpose in the Refugee Act of 1980 obliged the Secretary to treat all refugees uniformly:
>
> The objectives of this Act are to provide a permanent and systematic procedure for the admission to this country of refugees of special humanitarian

---

* To the extent that the Tucker Act is applicable, plaintiffs' remedy lies in the Court of Claims. That Court has exclusive jurisdiction over Tucker Act claims that exceed $10,000. 28

U.S.C. § 1346. *See, Rowan & Son, etc. v. Department of Housing*, 611 F.2d 997 (5th Cir. 1980).

concern to the United States, and to provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted. 8 U.S.C.A. § 1521 note (1982 Supp.).

This statement of purpose indicates the resolve of Congress to initiate a single comprehensive, flexible program for acceptance of and assistance to all refugees. Refugee groups had theretofore been treated separately under different pieces of legislation addressing particular refugee problems as they arose. This statement is not a command to treat all refugees identically in dispensing program funds as the ensuing provisions of the Act make abundantly clear.

Finally, plaintiffs urge that the regulation is arbitrary and capricious. This contention was also rejected by the D.C. Court:

> The fact that other possibilities existed which would lessen the strain on these particular refugees living in the State of Washington to the disadvantage of refugees in other phases of the program does not change the Court's view of the matter. Providing continued assistance to refugees residing in the United States more than 18 months would have required the Secretary to reduce benefits available to other refugees, in particular those admittedly more needy refugees recently arrived in the United States. The Secretary's decision was rational and not arbitrary.

*Accord, Seng v. Gibbs,* Civil Action No. C82–337C (W.D. Wash. May 24, 1982).

Plaintiffs offer no persuasive reason for rejecting the well-reasoned decisions of the D.C. and Western District of Washington courts. Given these two persuasive opinions and the relative lack of support for plaintiffs' position, I must conclude that there is little likelihood that plaintiffs will prevail on the merits of their claim.

## IV.  CONCLUSION

Plaintiffs lack standing to raise the majority, if not all, of the claims asserted in the complaint. Assuming the plaintiffs have standing, they have not demonstrated any irreparable harm or that they are likely to succeed on the merits. Accordingly, it is ORDERED AND ADJUDGED that the motion for preliminary injunction is DENIED.