**Robert WOLMAN, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 80–1746.**

United States District Court,
District of Columbia.

July 8, 1982.

Charles Sims, New York City, David Landau, Washington, D. C., for plaintiffs.

Theodore C. Hirt, Dept. of Justice, Washington, D. C., for defendants.

MEMORANDUM

GESELL, District Judge.

In a Memorandum decision dated November 24, 1980, this Court held that the Selective Service's practice of requiring draft registrants to supply their Social Security numbers violated the Privacy Act, Pub. L.No. 93–579, § 7, 88 Stat. 1986, 1909 (codified at 5 U.S.C. § 552a (note) (1976)). 501 F.Supp. 310 (D.D.C.1980). After an appeal had been taken, Public Law 97–86 was enacted, amending the Military Selective Service Act, 50 U.S.C.App. § 453, as of December 1, 1981. Believing that this enactment had shifted "[t]he focus of the inquiry," the Court of Appeals remanded the case to this Court for further consideration in light of Public Law 97–86. 675 F.2d 1341. Taking diametrically opposed views of the effect of this enactment, plaintiffs have now moved to confirm the Court's original ruling while defendants have filed a motion to dismiss and vacate judgment.

Section 7 of the Privacy Act provides that the Federal Government shall not deny any "right, benefit, or privilege" because an individual refuses to disclose his Social Security number, except where "disclosure . . . is required by Federal statute." 5 U.S.C. § 552a (note) (1976). It was the absence of such a statute which was the primary basis of the Court's earlier ruling. Public Law 97–86 was enacted to provide the necessary statutory authority to require submission of Social Security numbers by draft registrants. It reads, in pertinent part:

(b) Regulations prescribed pursuant to subsection (a) of this section may require that persons presenting themselves for and submitting to registration under this section provide, as part of such registration, such identifying information (including date of birth, address, and social security account number) as such regulations may prescribe.

50 U.S.C.App. § 453(b). Congress may have acted in response to the following statement in the Court's earlier decision:

The failure of Congress to provide the necessary authority quite possibly results from a legislative error. It is clear from the congressional hearings preceding reinstitution of registration that Congress was aware that Social Security numbers would be requested in the registration form. If, in fact, there was an inadvertent omission, this can be immediately corrected by the Congress before the next registration in January.

501 F.Supp. at 311. In any event, the legislative history of Public Law 97–86 clearly demonstrates that Congress acted for the specific purpose of overturning the effect of the Court's ruling. See H.R.Rep.No. 97–71 Part I, 97th Cong., 1st Sess. 160–61 (1981) (hereinafter cited as "H.R.Rep."), U.S.Code Cong. & Admin.News 1981, p. 1781. S.Rep.No. 97–58, 97th Cong., 1st Sess. 150 (1981) (hereinafter cited as "S.Rep."); 127 Cong.Rec. H 4421 (July 16, 1981) (daily ed.).

In contending that the Court should reaffirm its prior decision in spite of Public Law 97–86 plaintiffs make two arguments:

(1) Plaintiffs contend that Congress in Public Law 97–86 simply permitted Selective Service in its discretion to issue new regulations requiring registrants to furnish their Social Security numbers and that in the absence of any such new regulation no registrant (past or present) can be required to supply his Social Security number.

(2) Plaintiffs further contend that individuals who were allowed to register without providing their Social Security numbers have already presented themselves for and submitted to registration and therefore cannot now be required to supply the number.

Selective Service regulations in effect since July, 1980, have required registrants to submit their Social Security numbers. 45 Fed.Reg. 48,130 (1980) (codified at 32 C.F.R. § 1615.4(a) (1981)). While this Court enjoined Selective Service from obtaining these numbers by reason of the failure to comply with the Privacy Act, the Court's Order was immediately stayed by the United States Court of Appeals and except for a brief period of approximately a month registrants have been required to submit Social Security numbers. Those registering without providing the number have been forcefully reminded by Selective Service of their obligation to do so. See Exhibits A & B to Plaintiffs' Opposition to Defendants' Motions (1) to Dismiss and to Vacate Judgment and (2) to Decertify the Class.

Neither the language of the statute nor the legislative history provides any definitive guidance on the issues presented. Plaintiffs contend that in providing that "regulations prescribed pursuant to subsection (a) . . . may require" (emphasis added), Congress intended that new regulations would need to be promulgated. But the language is equally susceptible to the interpretation that Congress simply meant to confirm the Selective Service's earlier discretionary decision to promulgate regulations requiring submission of Selective Service numbers. Similarly, although Congress probably contemplated that Social Security numbers would be submitted as part of the registration process in applying the statute to those "presenting themselves for and submitting to registration," it would strain the legislative language to conclude that those who for whatever reasons have evaded the requirement to submit the number at a particular moment in time should thereafter be completely immune from the requirement. With respect to the legislative history, there are indications that at least some Congressmen thought the statute granted the Selective Service merely discretionary authority to promulgate regulations. See 127 Cong.Rec. H 4423, H 4426 (July 16, 1981) (daily ed.) (statements of Representative Mitchell and Representative Montgomery). But even assuming this to be true, it does not resolve the question whether Congress intended that the prior regulations should take effect on the effective date of the Act or whether it contemplated that new regulations would be required.

In the absence of any more specific direction the Court must turn to the circumstance which lead to this enactment as well as common sense. Both Houses of Congress regarded correcting the legislative gap not-

ed in this Court's earlier ruling as an essential measure to ensure an "effective and efficient program for identifying those who do not register." H.R.Rep. at 161; *see also* S.Rep. at 150. Indeed, one report states:

A recent court decision, currently in the appellate process, has left the Selective Service enforcement program in doubt. The committee believes this situation is detrimental to the national security and believes the Selective Service System requires the authority to conduct an effective program.

S.Rep. at 150. One other measure of the urgency with which Congress viewed the delay in enforcement caused by the Court's ruling is that Congress overcame efforts in both Houses to delete this provision from Public Law 97–86 so that the issue of requiring registrants to supply their Social Security numbers could be considered at a later time. *See* 127 Cong.Rec. S 4971 (May 13, 1981) (daily ed.); 127 Cong.Rec. H 4420–29 (July 16, 1981) (daily ed.); H.Conf.Rep. No.97–311, 97th Cong., 1st Sess. 129 (1981).

Against this background it would obviously fly in the face of congressional intent to hold that effective enforcement efforts must await the promulgation of new regulations, repeating word-for-word those promulgated in 1980. Similarly, it would be inconsistent with the intent of Congress to hold that there are two classes of registrants: first, the group who refused up to the date of the enactment to give their Social Security numbers, and, second, a group of later registrants who might be required to do so. Partial coverage of the pool of draft registrants would obviously impair effective efforts to enforce registration requirements through the Social Security identifier.

Congress is a pragmatic body. The tendency to scrutinize legislative language in a pedantic manner to the exclusion of reason and in ignorance of the circumstances that generated the congressional action is one that should not be encouraged. The entire legislative history in this instance fails to recognize any substantive concern in the Congress for the issues which plaintiffs now so vigorously urge. To the extent that it sheds light on the issues presented, the legislative history reflects Congress' desire to proceed with full and adequate registration forthwith. Accordingly, defendants' motion to dismiss and vacate judgment will be granted, there being no further basis for holding that the Selective Service regulations requiring registrants to submit Social Security numbers are in violation of the Privacy Act.