UNITED STATES of America, Plaintiff,

v.

**TWO HUNDRED THOUSAND DOLLARS ($200,000) IN UNITED STATES CURRENCY, Defendant.**

**No. 83–1296–Civ–SMA.**

United States District Court,
S. D. Florida,
Miami Division.

July 10, 1984.

Richard S. Friedland, Alan I. Mishael, Miami, Fla., for plaintiff.

Joseph Beeler, and Holly Skolnick, Miami, Fla., for defendant.

Robert I. Targ, Miami, Fla., for claimants.

## ORDER GRANTING CLAIMANT PALZER'S MOTION TO DISMISS, WITHOUT PREJUDICE

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the Motion to Dismiss Amended Complaint filed by Claimant LEWIS PALZER ("PALZER") in the above-styled action. The Court held a hearing on this Motion on Wednesday, March 7, 1984, and requested both parties to submit supplemental memoranda, which have been filed and accepted pursuant to extensions of time granted by the Court.

THE COURT having carefully considered and reviewed the Motion and response thereto, all memoranda of law and supplemental memoranda submitted in support of the parties' respective positions, the record including affidavits and exhibits, the oral argument of counsel at the hearing of March 7, 1984, the law, and having been otherwise advised in the premises, it is thereupon

ORDERED AND ADJUDGED that Claimant PALZER's Motion to Dismiss Amended Complaint be, and the same is hereby, GRANTED WITHOUT PREJUDICE to the Government of the United States to file a Second Amended Complaint, within TWENTY (20) DAYS HEREFROM, setting forth a cognizable claim for forfeiture *in rem,* if grounds for such a claim exist in accordance with the determinations hereinafter set forth, *see* p. 875 & n. 6 *infra,* and WITHOUT PREJUDICE to the Government to pursue any criminal prosecution(s) against Claimant PALZER arising from or related to the $200,000 which is the subject of the instant litigation. PALZER OR ANY OTHER CLAIMANT(S) wishing to move this Court to act further with respect to the TWO–HUNDRED THOUSAND DOLLARS ($200,-000.00) at issue in this action shall file appropriate papers with the Court NOT LATER THAN TEN (10) DAYS AFTER THE GOVERNMENT files its Second Amended Complaint, if same is filed, or NOT LATER THAN THIRTY (30) DAYS HEREFROM, in the event that the Government does NOT file a Second Amended Complaint. If no Second Amended Complaint is filed within the prescribed time period, then this ORDER shall be treated as a FINAL ORDER and this action shall be DISMISSED thereon.

## NATURE OF THIS ACTION

The United States Government seeks through this lawsuit the forfeiture of two hundred thousand dollars ($200,000) that was seized on August 4, 1982 by the United States Customs Department ("CUSTOMS")

from Claimant PALZER at Miami International Airport. PALZER had arrived on that date from the Cayman Islands aboard a Republic Airlines flight. The Government claims that PALZER failed to satisfy his alleged obligation to fill out Customs Declaration Form 6059–B and Currency Reporting Form 4790 pursuant to the requirements of Section 232 of the Currency and Foreign Transactions Reporting Act ("Bank Secrecy Act"). *See* 31 U.S.C. §§ 1053, 1055 & 1101(a)(1)(B) [1981], *rev'd and recodified,* 31 U.S.C. §§ 321(b)(1), 5316(a) & 5318 [1982], Pub.L. 97–258, 96 Stat. 998 [Sept. 13, 1982]. However, the requirements of the Bank Secrecy Act cannot be applied to Claimant PALZER because Customs Form 4790 was not properly promulgated in that the form is an implementing rule which should have been published in the Federal Register and should have been subject to the notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. §§ 551–559 ("APA"). Form 4790 is thus a nullity with respect to Claimant PALZER, and the form is invalid unless and until it is properly published in the Federal Register pursuant to the APA requirements.

Three basic sets of issues fact the Court on Claimant's Motion: (1) whether Customs Form 4790 is an administrative "rule," (2) whether the form is the type of "rule" that must be published in the Federal Register and/or must be given other procedural safeguards under the APA, and (3) whether the form was in some sense constructively published or otherwise adequately made known to Claimant PALZER. The same issues face the Court with respect to the currency reporting question on Customs Declaration Form 6059–B, which is addressed separately at the end of this Final Order. See pp. 874–875 *infra.* These issues are analyzed in the context of the Government's sought-after relief, forfeiture, which is a harsh remedy and, as such, merits a strict construction of the forfeiture provisions.[1]

---

1. See generally *United States v. One 1936 Model*    *Ford Deluxe V–8 Coach,* 307 U.S. 219, 226, 59

### CUSTOMS FORM 4790 IS A "RULE" UNDER THE APA

█ A "rule" or a "regulation" is the product of administrative legislation. A rule is analogous to a statute in that courts are bound by rules in the same way that courts are bound by statutes; this is because a rule is promulgated pursuant to agency authority delegated by Congress. Section 551 of the Administrative Procedure Act ("APA"), 5 U.S.C., defines a "rule" as follows:

> "(4) 'rule' means the whole or part of an agency statement of general or particular applicability and future effect, designed to implement, interpret, or prescribe law or policy ..."

Claimant PALZER's argument that Customs Form 4790 is an *implementing* rule, enacted as an enforcement mechanism for the regulations of the Internal Revenue Service ("IRS") and the United States Customs Department ("CUSTOMS"), is supported by the plain language of the statute, 5 U.S.C. § 551(4). *See also* 36 Fed.Reg. 15449 (1971) ("[t]hese proposed forms when finally adopted will *implement* the reporting requirements found in the Currency and Foreign Transactions Reporting Act, title II of Public Law 91–508 (84 Stat. 1118 *et seq.*)"). (Emphasis added).

█ For an agency statement or requirement to be considered a valid "rule," three conditions must be satisfied: the "rule" must be within the agency's granted power, it must be issued pursuant to proper administrative procedures, and it must be reasonable as a matter of due process. K. Davis, *ADMINISTRATIVE LAW TREATISE* § 7:8 at 36 (1979 & Supp.1982). Under these criteria, the Court must first inquire as to whether Customs Form 4790 was promulgated pursuant to authority delegated to CUSTOMS by Congress; without such authority, the Secretary of the Treasury in promulgating the form could not have been engaging in rulemaking that

would invoke the requirements of APA §§ 552 & 553. That CUSTOMS had the proper authority delegated to it is apparent from 31 U.S.C. § 5318 (1982),[2] *recodifying and modifying* 31 U.S.C. § 1101(a)(1)(B) [1981], which requires, *inter alia,* that a person transporting more than $5,000 into the United States from abroad must file a report. Section 206 of the Act then provides:

> "The Secretary may make such exemptions from any requirements otherwise imposed under this title as he may deem appropriate. Any such exemption may be conditional or unconditional, by regulation, order, or licensing, or any combination thereof, and may relate to any particular transaction, to the type or amount of the transaction, to the party or parties or the classification of parties, or to any combination thereof ..."

31 U.S.C. § 1055 (1981), *rev'd and recodified* at 31 U.S.C. § 5318 (1982).

Construing 31 U.S.C. §§ 1051–1062, 1081–1083, 1101–1105 and 1121–1122, the Supreme Court of the United States held that the Bank Secrecy Act is not self-executing; absent action by the Secretary of the Treasury ("the Secretary"), the currency reporting requirements would bear no real significance. *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 26, 94 S.Ct. 1494, 1500, 39 L.Ed.2d 812 (1974) ("the Act's civil and criminal penalties attach only upon regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone"). Thus, the statute delegates authority to the Secretary to promulgate regulations to implement the statute; the regulations set forth the duties and requirements authorized by Congress. However, the regulations are incomplete in this case without the forms, because the regulations do not set forth the information a traveler will be required to furnish on the forms, specifically Form 4790.

S.Ct. 861, 864, 83 L.Ed. 1249 (1939).

**2.** 31 U.S.C. § 1101(a)(1)(B) [1981], the unrevised text of this statute, is referred to herein because

the revisions were drafted after the events in question were alleged to have occurred in the case at bar.

■ The published regulations refer to the requirement that travelers entering or leaving the United States carrying more than $5,000 "shall make a report thereof," 31 C.F.R. § 103.23(a) and that such reports "shall be on forms to be prescribed by the Secretary and all information called for in such forms shall be furnished," 31 C.F.R. § 103.25(b), but nowhere does the Federal Register provide information regarding the type or length or format of the forms or the information that will be required by them. In this respect, the regulation fails even to satisfy 5 U.S.C. § 552(a)(1)(C), which the government argues is applicable to Form 4790; that section of the APA states:

> "(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—
>
> (C) rules of procedure, descriptions of forms available or the places at which such forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examination."

In the case of Form 4790, no description was published, no notification was given of the place at which the form could be obtained,[3] and no instructions or notice were provided as to the scope or contents of the required report. Hence, even if 5 U.S.C. § 552(a)(1)(C) were applicable to Form 4790, the form would be deficient absent publication of the required information. However, Form 4790 is also a rule because, as explained above, a traveler could not possibly know what information he would be required to furnish under the regula-

tions without being advised of the content of the form.

## FORM 4790, AS A "RULE" UNDER THE APA, SHOULD HAVE BEEN PUBLISHED IN THE FEDERAL REGISTER

■ The APA requires that rules be published in the Federal Register absent an explicit exemption provided by the Act. 5 U.S.C. § 553. No exemptions apply here. Form 4790 does not involve a military or foreign affairs function of the federal government, *see* 5 U.S.C. § 553(a)(1), nor a matter relating to agency management or personnel or public property, *see* § 553(a)(2). Moreover, Customs did not explicate in the rules issued any reasons for why notice procedures would not be practicable or in the public interest. *See* 5 U.S.C. § 553(b). Further, the form at issue in the case *sub judice* is not an "interpretative" rule that would be exempt from the publication requirements of the APA. Interpretative rules are "statements as to what the administrative officer thinks the statute or regulation means," *see Citizens to Save Spencer County v. United States Environmental Agency*, 600 F.2d 844, 876 (D.C. Cir.1979), *quoting Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C.Cir.1952), whereas substantive rules, such as Form 4790, are issued by an agency pursuant to statutory authority which have the force and effect of law. *See generally Brown Express, Inc. v. United States*, 607 F.2d 695 (5th Cir.1979). It is also apparent that Form 4790 is not a "general statement of policy" as would be exempted from the

---

**3.** 31 C.F.R. § 103.25(d) states that Form 4790 may be obtained from the offices of the IRS or Customs. However, this regulation itself appears invalid under 5 U.S.C. § 553. Regulation 103.25(d) was published in its final form at 37 Fed.Reg. 6212 (1972). The regulation had already been adopted, yet 37 Fed.Reg. 6212 (1972) stated that "notice of proposed rule making to implement the provisions of Titles I and II of Public Law 91–508 (84 Stat. 1114 et seq.), was published in the Federal Register (36 F.R. 11208 (1971))." However, Regulation 103.25(d) did not appear as a proposed rule at 36 C.F.R. 11208 (1971). Regulation 103.25 thus appears deficient under the notice and comment provisions

discussed herein. See pp. 872–873, *infra.* Further, 5 U.S.C. § 552(a)(1)(C) requires instructions as to the scope and contents of the reports, which instructions did not appear in Regulation 103.25(d). Even assuming, *arguendo*, that Regulation 103.25(d) was properly promulgated, however, Form 4790 would not thus be cured of its taint of improper promulgation under the APA. This is because, as held above, Form 4790 is a "rule" subject to the APA requirements of publication, notice and comment. Form 4790 being both a rule *and* a form, more was required for proper adoption of Form 4790 than the merely cursory statement required by 5 U.S.C. § 552(a)(1)(C).

publication requirements under 5 U.S.C. § 553(b). That Form 4790 is a "legislative" rule rather than an interpretative one or a general statement of policy is apparent from the fact that the form was clearly intended to implement the pertinent statute, 31 U.S.C. § 1101(b) and the regulation, 31 C.F.R. § 103.23; section 551(4) of the APA distinguishes agency statements designed to *implement* a law from those designed to *interpret* it.

Significantly, Form 4790 itself imposes substantive duties which travelers cannot avoid without facing possible sanctions. The form requires travelers carrying more than $5,000 to provide Customs with such data as name, address, birth date, citizenship, passport number, immigration alien number and U.S. Visa date, as well as all information regarding the international transportation of currency. The form also requires the traveler to furnish his or her social security number (if any), although this requirement is not mentioned in the authority cited in the form instructions, 31 C.F.R. 103.25. Disclosure of social security numbers is the subject of Section 7 of the Privacy Act of 1974, Public Law 93–579, which states that a government agency may not lawfully deprive any individual of a legal right, benefit or privilege because of such person's refusal to disclose his or her social security number. *See note* to 5 U.S.C.A. § 552a (1977).[4] The relevance of this uncodified statute-at-large is simply that it highlights the importance of privacy interests associated with social security information. *Cf. Wolman v. United States,* 501 F.Supp. 310 (D.C.D.C.1980), *remanded,* 675 F.2d 1341 (D.C.Cir.1982), *vacated on*

*other grounds,* 542 F.Supp. 84 (D.C.D.C. 1982) (Section 7 of the Privacy Act was intended, the District Court found, to block indiscriminate governmental use of social security information as the "universal identifier."). Customs Form 4790 further requires the traveler to disclose the name, address and occupation of his principal if he is carrying the money as an agent, as well as the city and country from which he has traveled.

The significance of the information required by Form 4790 is further exemplified by comparison of 31 C.F.R. § 103.23(a), which applies to international transporters of currency such as Claimant PALZER, with 31 C.F.R. § 103.23(b), which applies to persons who *receive* the requisite amount of currency ($5,000 or more) in the United States through the mails or other shipments. Section 103.23(b) states that the information which will be required in the currency report will include "the amount, the date of receipt, the form of monetary instruments, and the person from whom received." However, the section which applies to *transporters* of currency, § 103.-23(a), states only that a report must be filed. It would be logical to read these sections as implying that the same type of information, relating to the fact of transportation and nothing more, is what must be furnished by currency transporters on the appropriate forms. As explained above, however, substantially more data is ostensibly required by Form 4790.

Given the scope of the information which Customs Form 4790 requires a traveler to furnish, as well as the Form's role as an

4. The note states as follows:

DISCLOSURE OF SOCIAL SECURITY NUMBER.

Section 7 of Pub.L. 93–579 provided that: "(a)(1) It shall be unlawful for any Federal, State or local government agency to deny any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security number.

"(2) the provisions of paragraph (1) of this subsection shall not apply with respect to—

"(A) any disclosure which is required by Federal statute, or

"(B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

"(b) Any Federal, State or local government agency which requests an individual to disclose his social security number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it."

implementing mechanism for the reporting regulations, Form 4790 is a substantive and implementing rule which falls within none of the acceptable exemptions under the APA and should have been published in the Federal Register under 5 U.S.C. § 553(b) & (d).

## FORM 4790 SHOULD HAVE BEEN SUBJECT TO APA NOTICE AND COMMENT PROCEDURES

■ In informal rulemaking of the type addressed in the case at bar, case law holds generally that "[W]hen a proposed regulation of general applicability has a substantial impact on the regulated industry, or an important class of the members or products of that industry, notice and opportunity for comment should first be provided." *Pharmaceutical Manufacturer's Ass'n v. Finch*, 307 F.Supp. 858, 863 (D.Del.1970). The question of substantial impact is the focal point of the notice requirements of due process. *See generally Brown Express, Inc. v. United States*, 607 F.2d 695 (5th Cir.1979); *see also Sannon v. United States*, 460 F.Supp. 458, 464 (S.D. Fla.1978), *remanded*, 631 F.2d 1247 (5th Cir.1980). Thus, where a rule has substantial impact on the class of persons to whom it is directed, the agency must provide an adequate statement of the basis and purpose of the rule, and must respond in a reasoned manner to the comments received. *See generally Rodway v. United States Department of Agriculture*, 514 F.2d 809, 817 (D.C.Cir.1975), *and citations therein; Action on Smoking and Health v. Civil Aeronautics Board, supra.* In the case at bar, Customs Form 4790 has had a substantial impact on travelers carrying more than $5,000 in currency, as is apparent from the broad disclosure of information required by the form. The notification printed on Form 4790 itself implies the form's potential impact, stating in pertinent part:

> The principal purpose for collecting the information is to assure maintenance of reports or records where such reports have a high degree of usefulness in criminal, tax or regulatory investigations ...

■ The notice required by the APA must be "sufficient to fairly apprise interested parties of the issues involved ..." *Consolidation Coal Co. v. Costle*, 604 F.2d 239, 248 (4th Cir.1979), and such notice must afford interested parties "a reasonable opportunity to participate in the rulemaking process." *Forester v. Consumer Products Safety Commission*, 559 F.2d 774 (D.C.D.C.1977). The published rule did not set forth the types of information that would be sought in the forms or the rationale employed by the Secretary in promulgating the form. *See generally Action on Smoking and Health v. Civil Aeronautics Board*, 699 F.2d 1209, 1216 (D.C.Cir.1983), *on remand*, 713 F.2d 795 (D.C.Cir.1983) (recognizing the need for a reasonable relationship between the requirements of the rule and the underlying need for such requirements); 5 U.S.C. § 553(c) (requiring opportunity to be heard and thereafter that the agency furnish "a concise general statement of [the regulation's] basis and purpose."). The rationale for requiring the basis and purpose statement relates not only to the implications of due process, but also buttresses the ability of courts, "which have the duty to exercise review, to be aware of the legal and factual framework underlying the agency's action." *American Standard, Inc. v. United States*, 602 F.2d 256, 269, 220 Ct.Cl. 411 (1979); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 417, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) ("the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."). Thus, with respect to Customs Form 4790, notice to the public was inadequate, the public was not given a meaningful opportunity to comment, and the Secretary did not adequately explain the basis for the specific information requirements of the form. The only statement accompanying the publication of the final regulations adopted to implement the Currency and Foreign Transactions Reporting Act appeared at 37 Fed.Reg. 6912 (1972), and stated:

On June 10, 1971, a notice of proposed rule making to implement the provisions of Titles I and II of Public Law 91–508 (84 Stat. 1114 et seq.) was published in the Federal Register (36 F.R. 11208 (1971)). In accordance with the notice, interested parties were afforded an opportunity to submit written comments. After consideration of all such relevant matters as were presented by the interested parties, regarding the rules proposed, the regulations set forth below have been adopted.

The notice and comment procedures of § 553 were not adequately complied with through publication of this statement. No mention was made of the form designed to implement the regulations, Form 4790. More importantly, the statement as published does nothing to clarify the process or rationale by which the Secretary arrived at the regulation or the form. Accordingly, the published statement does not help the court in reviewing whether the basis for the rule as adopted was rational, e.g., its utility in law enforcement as weighed against its public impact and effect on privacy interests. Such conclusory statements as that published by the Secretary do not permit the kind of meaningful judicial review envisioned by Congress when it enacted 5 U.S.C. § 553(c). *See Action on Smoking and Health*, 699 F.2d at 1216–17. Claimant PALZER's substantive rights thus should not be affected by a rule so flawed in its promulgation.[5]

## FORM 4790 WAS NOT CONSTRUCTIVELY PUBLISHED SUFFICIENTLY TO SATISFY THE APA PROCEDURAL REQUIREMENTS

■ The publication of a rule in the Federal Register made obligatory by 5 U.S.C. § 553(d) relates back to 5 U.S.C. § 552(a)(1)(D), which requires that agencies shall separately state and currently publish in the Federal Register all substantive rules of general applicability. This publica-

tion requirement is not satisfied by merely filing the rule with the Office of the Federal Register. *See Rowell v. Andrus*, 631 F.2d 699 (10th Cir.1980) (holding that 5 U.S.C. §§ 552 & 553 specifically require, in explicit terms, the *publication* of proposed rules as opposed to their mere filing with the Office of the Federal Register; the language of 44 U.S.C. § 1507 allows for notice through *filing*, but only if a statute such as the APA does not otherwise require publication); *see also United States v. Gavrilovic*, 551 F.2d 1099 (8th Cir.1977); *Graham v. Schweiker*, 545 F.Supp. 625 (S.D.Fla.1982); *Sannon v. United States*, 460 F.Supp. 458 (S.D.Fla.1978), *remanded*, 631 F.2d 1247 (5th Cir.1980).

The government has argued that I.R.S. Form 4790, the predecessor to Customs Form 4790, was submitted to the Office of the Federal Register for publication in 1971, but the Office failed to publish it. This Court does not reach the question whether, if the I.R.S. Form *had* been published, the requirements of the APA would have been satisfied with respect to the subsequent Customs Form 4790. The I.R.S. form was not published with the other regulations addressed herein, *see* 37 Fed.Reg. 6913 (1972) and 36 Fed.Reg. 158 (1971), and under the above-cited cases the I.R.S. form would likewise fail under the publication, notice and comment requirements of the APA. Under these circumstances, Customs Form 4790 certainly fails to satisfy these procedural requirements.

## CUSTOMS FORM 4790 IS INVALID UNTIL 30 DAYS AFTER IT IS PUBLISHED IN THE FEDERAL REGISTER

Based on the aforegoing, Customs Form 4790 is NULL AND VOID with respect to Claimant PALZER; Form 4790 is invalid unless and until the form is properly published in the Federal Register, in accordance with the notice and comment requirements of the APA. This is not to say that

---

5. *Informal rulemaking does not require the detailed factfinding proceedings required by 5 U.S.C. § 557(b), and no argument has been made by Claimant that such formal procedures* would or should have been followed by the Secretary or CUSTOMS with respect to Form 4790.

the form is necessarily invalid in a case in which a traveler had actual notice of the contents of the form. Section 552(a) states:

> Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

Despite the above-quoted language of Section 552(a), there is case law holding that even if a claimant such as PALZER had actual notice of the requirements of Customs Form 4790, the Government's violation of the APA's notice and comment procedures would render the rule void. *See, e.g., Chamber of Commerce of the United States v. O.S.H.A.*, 636 F.2d 464 (D.C.Cir.1980) (agency policy published without opportunity for interested persons to comment held invalid under the APA); *Brown Express, Inc. v. United States, supra* (rule published without opportunity for comment violated APA § 553(b)–(c) and was thereby vacated); *cf. United States Steel Corp. v. United States Environmental Protection Agency*, 595 F.2d 207, 215 (5th Cir.1979) (addressing the issue of the agency's lack of pre-promulgation notice and comment, which the agency sought to rectify through post-promulgation comment procedures, the Court noted, "[w]ere we to allow the EPA to prevail on this point we would make the provisions of Section 553 virtually unenforceable."). This Court, however, need not determine whether actual notice to Claimant PALZER would fall within the rubric of the cited cases or the quoted language of § 552(a), because nothing in the record indicates, no contention was made and there is no allegation in the pleadings, that Claimant PALZER was on actual notice of the requirements of Form 4790.

■ Under the case law, an invalid form is not void indefinitely, but may be saved and held valid after publication and passage of the 30-day notice period provided by 5 U.S.C. § 553(d). *See Rowell v.*

*Andrus, supra; Gavrilovic, supra; Graham v. Schweiker*, 545 F.Supp. 625 (S.D. Fla.1982). Since the rule created by Form 4790 is void and invalid with respect to Claimant PALZER, the Motion to Dismiss Amended Complaint is hereby GRANTED WITHOUT PREJUDICE as indicated above.

## CUSTOMS DECLARATION FORM 6059–B

■ Customs Declaration Form 6059–B asks the question whether a traveler is carrying more than $5,000 and advises the traveler that, if so, he or she must complete Form 4790. While this form appears, like Form 4790, to be an "implementing" regulation of the type discussed hereinabove, Form 6059–B does not suffer from the same deficiencies under the APA as its companion Form 4790. The Code of Federal Regulations states clearly that a traveler transporting more than $5,000 into or from the United States "shall make a report thereof," 31 C.F.R. § 103.23(a), placing any traveler on notice that he would be asked, at some point, to disclose whether or not he was carrying more than $5,000. Unlike Form 4790, the currency reporting question on Form 6059–B does not enlarge upon the regulation under which it was promulgated, *see* 19 C.F.R. § 148.13(a), (b), and it imposes no further liabilities or potential liabilities. Form 6059–B is informative in that it indicates to a traveler that he may be criminally liable if he knowingly violates the law. As stated in the Federal Register, Form 6059–B "is intended to insure that each traveler is aware of the reporting requirement and will aid in the enforcement of the Currency and Foreign Transactions Reporting Act." 42 Fed.Reg. 64492 (1977). The Federal Register contains a detailed description of the requirements of Form 6059–B, the rationale behind it and its availability. 42 Fed.Reg. 64492–3 (1977). The published information satisfies 5 U.S.C. § 552(a)(1)(C), *see* p. 870, *supra*, which is all that is required of a form which, unlike Form 4790, does not constitute a "rule" under the APA. However,

even if Form 6059–B is considered a "rule" under the APA, the published regulations and information in the Federal Register adequately apprise travelers of their obligation to answer the currency reporting question, which itself appears in the Federal Register. 42 Fed.Reg. 64492 (1977).

In the case at bar, Claimant PALZER is alleged to have falsely represented on Customs Form 6059–B that he was not carrying more than $5,000.00 of United States currency into the United States. The money which was seized was allegedly taken from the socks and underwear of Claimant PALZER pursuant to a search. The Court makes no findings as to the merits of these allegations except to note that under the forfeiture provisions of 31 U.S.C. § 1101 *et seq.*, no cause of action is apparently stated by the Amended Complaint in this case. As drafted, the Amended Complaint alleges only that "no report of the aforesaid transportation of the defendant $200,000 was filed with the United States Customs Service as required by 31 U.S.C. 1101 *et seq.*, and the regulations of the Secretary of the Treasury." The Amended Complaint in the case *sub judice* thus seeks forfeiture only on the basis of PALZER's failure to file a report, e.g., to complete Form 4790, which the Court has herein held invalid. Consequently, Claimant's Motion to Dismiss Amended Complaint is hereby GRANTED WITHOUT PREJUDICE to the Government to file, within TWENTY (20) DAYS HEREFROM, a SECOND AMENDED COMPLAINT setting forth a cognizable cause of action, if such exists under the Federal statutes and laws,[6] for forfeiture with respect to the Defendant, $200,000 in United States currency.

## CONCLUSION

For the foregoing reasons, Customs Form 4790 is null and invalid with respect to Claimant PALZER, and Claimant PALZER's Motion to Dismiss Amended Com-

plaint is hereby GRANTED WITHOUT PREJUDICE, as enunciated above. If the Government does not file a Second Amended Complaint within TWENTY DAYS herefrom, as explained above, this ORDER will be treated as a FINAL ORDER OF DISMISSAL.

---

6. The Court does not, at this time, determine that there is no possible cognizable cause of action for forfeiture of the Defendant, $200,000.00, under some statute, regulation or legal theory other than that alleged in the Amended Complaint. The Court will, if necessary, make such a determination—without readjudicating the matters determined in this ORDER—in the event that a Second Amended Complaint is filed purporting to state a cognizable claim.