**DR. PEPPER COMPANY**

v.

**SAMBO'S RESTAURANTS, INC.; Bozell & Jacobs, Inc., and Bozell & Jacobs International, Inc.**

No. CA3–81–0072–C.

United States District Court,
N. D. Texas,
Dallas Division.

July 13, 1981.

Robert W. Jordan & George C. Lamb, III, Rain, Harrell, Emery, Young & Doke, Mannett Antill Dodge, Dr. Pepper Co., Dallas, Tex., for plaintiff.

Roger C. Clapp, Richards, Harris & Medlock, Dallas, Tex., Douglas J. Wood, Hall, Dickler, Lawler, Kent & Howley, New York City, for defendants.

OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Frivolity has become a serious business these days. Television commercials which are meant to portray a stylization of the good life are crafted with great care, using all the skills that the arts and psychology have produced.

Undoubtedly, the vast majority of citizens of this nation have become familiar with Plaintiff (a Colorado Corporation with its principal place of business here in Texas)'s "Be A Pepper" media campaign. This campaign has been so successful that though it is in only its fourth year, Plaintiff projects that it will have a viability of at least ten years. This massive undertaking has so far cost Plaintiff over $100 million, quite a sum for a corporation whose annual sales are $330 million.

As is so many times true, success breeds imitation. Defendant Bozell & Jacobs, Inc., (a Delaware Corporation with its principal place of business in New York) as the advertising agent for Defendant Sambo's Restaurants, Inc., (a California Corporation with a California principal place of business) created a television commercial for Sambo's which had the intended effect of increasing the patronage of senior citizens at Sambo's Restaurants.

This commercial with the name of "Dancing Seniors" was created in the latter part of 1980 after copies of one or more of Plaintiff's copyrighted "Be A Pepper" commercials were obtained and viewed by Bozell & Jacobs employees. The individuals in the employ of Defendant Bozell & Jacobs, Inc., made no bones about it in their testimony, they were attempting a parody of the "Be A Pepper" commercials. Their first attempts were too successful in capturing the essence of Plaintiff's commercials and on the advice of counsel, changes were made so not so much of Plaintiff's material would be used.

Upon approval of Defendant Sambo's, the "Dancing Seniors" commercial was aired in several cities, including Dallas, in late 1980 and early 1981. These airings were in conjunction with a campaign involving the local Sambo's Restaurants in which store banners and advertising display table tents were used.

On January 16, 1981, Plaintiff filed its complaint in this Civil Action asking for a temporary restraining order, a preliminary injunction, a permanent injunction and money damages from the Defendants. At a conference attended by attorneys for both sides, the Court announced that it would enter a temporary restraining order enjoining Defendants from showing the "Dancing Seniors" commercial. Subsequently, Defendants agreed to forego a preliminary injunction hearing on the condition that discovery be expedited and trial on the merits be advanced on the Court's calendar.

Trial has now been had as to liability.[1] At the close of trial, the Court continued the restraining order until it could issue its opinion and any subsequent orders.

As Plaintiff's principal claims arise out of the copyright laws, 17 U.S.C. § 501[2] and the

---

1. The Parties have stipulated to a bifurcated trial as to liability and damages.

2. 17 U.S.C. § 501. Infringement of copyright
    (a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118, or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright.
    (b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of sections 205(d) and 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.
    (c) For any secondary transmission by a cable system that embodies a performance or a display of a work which is actionable as an act of infringement under subsection (c) of section 111, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that television station.
    (d) For any secondary transmission by a cable system that is actionable as an act of infringement pursuant to section 111(c)(3), the following shall also have standing to sue: (i) the primary transmitter whose transmission has been altered by the cable system; and (ii)

trademark laws, 15 U.S.C. § 1125,[3] this Court has jurisdiction under 28 U.S.C. § 1338.[4]

Plaintiff's complaint is in four counts entitled "Copyright Infringement," "False Designation of Origin and False Description," "Trademark Infringement" and "Misappropriation of Business Goodwill."

Counts I and III are self-explanatory in that a mere reading of their title shows them to arise under the federal copyright and the state and federal trademark laws.

Count II, "False Designation of Origin and False Description," arises under 15 U.S.C. § 1125, part of the federal trademark law. It will not be discussed separately from the discussion of Count III.

Count IV, "Misappropriation of Business Goodwill," alleges that Defendants have misappropriated part of the business goodwill of Plaintiff by copying Plaintiff's commercials and the jingle used in the commercials. The Court sees no viability of this count independent of the copyright and trademark claims of the Plaintiff. So it will not be discussed separately. It is axiomatic that the loss sustained by a business when its copyrights or trademarks are impinged upon is a loss of goodwill.

*Trademark*

■ The Court does not see a violation of Plaintiff's trademark rights in this case. A simple viewing of a selection of Plaintiff's commercials and the "Dancing Seniors" commercial shows that the "Dancing Seniors" commercial is clear in its depiction of what goods and services are being sold by whom. There is no attempt in the "Dancing Seniors" commercial to sell a soft drink in competition with Plaintiff and there is no suggestion that the goods and services marketed by Defendant Sambo's are the goods and services of Plaintiff.

Indeed, Defendants commissioned a market survey to test the likelihood of confusion between Defendant Sambo's goods and services and Plaintiff's goods. The results of this survey, as expected, are quite clear. Absolutely no one believed that the "Dancing Seniors" commercial is an attempt to sell a soft drink in competition with Plaintiff or that it is a commercial for anyone other than Defendant Sambo's.

Eight percent of the persons interviewed in that survey did state that the "Dancing Seniors" commercial was similar to Plain-

---

any broadcast station within whose local service area the secondary transmission occurs.

**3.** 15 U.S.C. § 1125. False designations of origin and false descriptions forbidden

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

(b) Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or ad-

mitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

**4.** 28 U.S.C. § 1338. Patents, plant variety protection, copyrights, trademarks and unfair competition

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws.

tiff's commercials.[5] But this has to do with copyright infringement, not unfair use of trademarks, confusion of goods and services or trademark infringement.

Plaintiff contends in particular that the jingle used in "Dancing Seniors" contains a phrase that because of its similarity to a phrase in Plaintiff's copyrighted "Be A Pepper" jingle, which it uses in its commercials, misleads the public and confuses them. The "Be A Pepper" jingle's chorus ends with what must be a very familiar line to most people in this country, "... Wouldn't you like to be a Pepper too?" "Dancing Seniors"has as its tag the phrase: "Don't you want to be a Senior too?" The original version of this tag was "Wouldn't you want to be a Senior too?" But this is one of the items that was changed for fear it would infringe on Plaintiff's rights.

As a matter of practicality, this still does not show a likelihood of confusion between the goods and services sold by Defendant

Sambo's and Plaintiff's goods under the *Lanham Act*, 15 U.S.C. § 1125(a) (1976). As a matter of formal logic, the "Be A Pepper" jingle is copyrighted, Plaintiff's property interest in it is protected by the copyright law not by either the state or federal trademark laws.

So, in summation, Plaintiff has not shown either the infringement of a trademark or a likelihood of confusion between its goods and the goods and services of Defendant Sambo's.[6]

*Copyright*

Plaintiff has copyrighted both its various television commercials and its "Be A Pepper" jingle and claims that its exclusive rights under 17 U.S.C. 106[7] both the copyrights of the commercials and that of the jingle have been infringed without being excused under 17 U.S.C. § 107 (1976).[8]

■ To show infringement, Plaintiff must first show ownership of a valid copy-

---

**5.** Defendant's Exhibit 10 entitled *Television Commercial Awareness in Clutter Situation— Dallas, Texas—April, 1981* shows the commercials that were stated by interviewees to be similar to "Dancing Seniors" in the following percentages:

|  | Recall |
|---|---|
| Dr Pepper | 8% |
| Kinney's Shoes | 5 |
| Burger King, McDonalds, Dairy Queen, Wendy's, Denney's | 6 |
| Jeno's, Tony's, other pizza | 4 |
| Other commercial | 2 |
| Others (None over 1 person) | 7 |
| Not similar to any other | 67 |
|  | 99% |
| Base | (120) |

**6.** Plaintiff has made no claim that a registered trademark owned by it has been infringed by the "Dancing Seniors" commercial so there is no false designation or origin question presented under 15 U.S.C. 1125.

**7.** 17 U.S.C. § 106 (1976) reads:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or

other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

**8.** 17 U.S.C. § 107 reads:

Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

right and second, that Defendants or their agents and employees copied it.[9] A copy need not be exact but may be a colorable alteration of the copyrighted work.[10]

No real dispute has been made by Defendants about Plaintiff's ownership of the copyright of the "Be A Pepper" jingle and the various commercials and Plaintiff produced sufficient evidence at trial to show prima facie ownership.

Defendants' defense to the copyright count is in two parts. First, they say that "Dancing Seniors" is not a copy and, second, that if it is, they have made fair use of the copyrighted material as allowed by 17 U.S.C. § 107.

The first contention just will not hold water. The creators of "Dancing Seniors" testified that they were trying to parody Plaintiff's commercials and, as a matter of fact, had to tone down their original rendering to satisfy Defendant Bozell & Jacobs, Inc.'s attorneys.

As Judge Brown pointed out in his partial concurrence and partial dissent in *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171 (Fifth Cir., 1980), at 1179, the copyright laws protect the expression of an idea, not the idea itself. So we are confronted with the question of whether Defendants copied Plaintiff's expression embodied in the commercials and the jingle or the idea behind that expression.

The Court finds that the "Dancing Seniors" commercial and its jingle do copy Plaintiff's expression. It may well be impossible not to copy an expression when one is attempting to parody. But, in any event, a viewing of "Dancing Seniors," an assortment of Plaintiff's commercials and a hearing of the two jingles shows their substantial similarity and therefore the copying.

Plaintiff did a good job in its trial brief at p. 13 in setting out some of the major similarities between the commercials. It listed these similarities:

1. Both commercials begin with the appearance of a single individual.

2. Those individuals begin to sing a jingle, the first line of which establishes the individuals' patronage of a particular product ("I drink Dr Pepper and I'm proud" versus "I eat at Sambo's Restaurants every day").

3. The jingle sung by each of the individuals then portrays the individuals as special or original by virtue of their association with the product ("I'm part of an original crowd" versus "I get a special deal on my dinner meal").

4. The individuals begin dancing and are joined by others who follow their lead "ala Dr Pepper."

5. The viewers of both commercials are then invited to join the special or unique groups in the chorus of the jingle ("Wouldn't you like to be a Pepper, too?" versus "Don't you want to be a Senior, too?").

6. The viewers of both commercials are again invited to join the group as the chorus of both commercials is repeated.

Defendants did try to show that the tag line listed in number 5 above, "Don't you want to be a Senior, too?" is not musically similar to Plaintiff's "Be A Pepper" tagline, "Wouldn't you like to be a Pepper, too?" But Defendants' well qualified expert witness only took into account the two musical lines; he did not take into account the combination of lyrics and music. A listen to the "Dancing Seniors" jingle strikes a person with its tag line's similarity to the "Be A Pepper" jingle's tag line.

So we find that Defendant Bozell & Jacobs, Inc. was successful in creating for Defendant Sambo's a commercial that copies, and, maybe, parodies Plaintiff's "Be A Pepper" commercials and jingle.

---

9. *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir., 1978).

10. *Tennessee Fabricating Co. v. Moultrie Manufacturing Co.*, 421 F.2d 279, 284 (5th Cir. 1970), cert. den., 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970).

The heart of Defendants' defense in this controversy is the fair use doctrine embodied in 17 U.S.C. § 107, set out in footnote 8, before.

*Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, supra, would appear to be the controlling authority as to this area of law in this Circuit.

That situation was somewhat comparable to the present one. One of Knight-Ridder's newspapers used a depiction of covers of TV Guide magazine, owned by Triangle Publications, in a series of television newspaper advertisements for a new television supplement for the newspaper. Knight-Ridder was not attempting to parody the TV Guide cover but was comparing its old supplement and its new supplement to TV Guide.

Judge Brown, in his majority opinion, explicated the four factors of 17 U.S.C. § 107 in light of that situation. His reasoning as to the four factors is clearly in point in this case.

As to the first factor, purpose and character of use, he found that ". . . any commercial use tends to cut against a fair use defense."[11] He went on to say that this factor should not be given too much weight as the use was for comparable advertising which is a use generally accepted in the advertising industry. At trial, Defendants did come forth with some evidence that could be said to show that parody is acceptable in the advertising industry.

Judge Brown then found that the work that was copied, was commercial in nature (the second factor) was neutral as to a fair use defense.

The third factor, amount and substantiality of the portion used in relationship to the whole of the copyrighted work, he found to not be very important in that case because only the cover was used, not the substance of the magazine, the articles and schedules. The present situation is different. Defendants have copied the essence of the copyrighted commercials and jingle. So this factor would tend to show no fair use.

Judge Brown characterized the fourth factor, potential market for or value of the copyrighted work, as the most important. He found only a de-minimus effect on the value of the copyright. Triangle Publications failed to offer ". . . a cogent explanation of the logical link between the showing of TV Guide covers and the alleged harm to the copyright."[12]

That is not the case here. Plaintiff has shown lucidly how it is harmed by the "Dancing Seniors" commercial.

Plaintiff has spent approximately $100 million on this "Be A Pepper" advertising campaign since 1978. This is quite a sum of money for a corporation whose gross sales were $330 million in 1980. Plaintiff has built up a tremendous amount of business goodwill which reposes in this advertising campaign. As stated before, the campaign is such a success that it is now projected that it will endure for ten years instead of the seven years that it was originally thought that it would last. Distractions from the uniqueness and originality of the "Be A Pepper" commercials would logically shorten the life of the campaign which would be a loss of the business goodwill of Plaintiff.[13]

The present distraction from Plaintiff's copyrighted works is serious and therefore should not be allowed. Moreover, given that the infringement is substantial, Defendant should not be heard to say that by opposing the airing of one commercial

---

11. Supra, p. 1175.

12. Ibid, p. 1177.

13. Defendants presented Mr. Stanley Marcus as a witness who said that the "Dancing Seniors" commercial was in good taste. Mr. Marcus is undoubtedly one of the few real tastemakers in this country. But whether or not the commercial is in good taste or even a clever parody of a copyrighted work is somewhat beside the point. In advertising, the appropriation of the form and substance of a copyrighted work will cause that copyrighted work to lose its valuable uniqueness and originality even if the infringing work is in good taste and cleverly done.

Plaintiff is sticking its finger in a small hole in the dam.[14]

Therefore, a permanent injunction shall be entered on Plaintiff's behalf and a trial held as to damages sustained by Plaintiff.

**14.** Plaintiff's officials testified that it gets numerous requests each year to use the "Be A Pepper" jingle. It licenses those performances that it believes will add value to its "Be A Pepper" campaign and refuses to do so for those that it believes will detract from its campaign. This is clearly a logical and permitted use of the copyright laws to control Plaintiff's valuable property. This suit could be characterized the same.