CHUCK BLORE & DON RICHMAN,
INCORPORATED, a California
corporation, Plaintiff,

v.

20/20 ADVERTISING INC., a Minnesota
corporation, and Duling Optical Corporation, a Delaware corporation, Defendants.

Civ. No. 4–87–501.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 8, 1987.

Earl D. Reiland, Merchant, Gould, Smith, Edell, Welter & Schmidt, Minneapolis, Minn., for plaintiff.

Brian E. O'Neill, Charles E. Steffey, Kristin A. Siegesmund, Faegre & Benson, Minneapolis, Minn., for defendant Duling Optical Corporation.

Michael F. Gallagher, Hopkins, Minn., for defendant 20/20 Advertising Inc.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motion for summary judgment. Defendants' motion will be granted in part and denied in part.

### FACTS

Plaintiff Chuck Blore & Don Richman, Inc. (Blore) is a California advertising agency which designs and produces commercials for television, radio and other mediums. Defendant 20/20 Advertising (20/20) is a Minnesota advertising company also engaged in designing and producing such commercials. Defendant Duling Optical Corporation (Duling), a client of 20/20, is a Delaware corporation specializing in the sale of eyewear products and eyecare services. Duling is licensed to do business in Minnesota and conducts business there. This dispute arises over a series of television commercials produced by 20/20 for Duling featuring the actress Deborah Shelton, best known for her role in the television series "Dallas." Plaintiff contends these advertisements were substantially copied from a series of its copyrighted commercials that also feature Deborah Shelton.

In addition, plaintiff alleges that defendants made an unauthorized copy of its copyrighted commercials to facilitate their production of their infringing commercials. The complaint has five counts alleging copyright infringement, violation of the Lanham Act, violations of the Minnesota Deceptive Trade Practices Act and Minnesota Unlawful Trade Practices Act and common law unfair competition. Jurisdiction is properly invoked under 28 U.S.C. § 1331, 1332 and 1338 and the doctrine of pendent jurisdiction.

In 1980 Blore designed and produced a television commercial using the actress Deborah Shelton and titled the work "Deborah." Complaint par. 14. Blore registered its Deborah commercial with the Copyright Office in 1981 receiving from the Registrar of Copyrights a Certificate of Registration No. Pa–134–443. In 1986 Blore produced six other Shelton commercials the first titled "Deborah–WSSL–Greenville," and the other five under the rubric "Deborah–Daily News" subsuming "Awards," "People Use the Daily News," "Features," "Neighbors" and "Bubble Bath." Blore alleges, and defendants have not denied, that it is the exclusive owner of the copyright of its seven "Deborah" commercials because it complied with all the relevant copyright laws. After the commencement of this action plaintiff registered the "Greenville" commercial separately, and the remaining five together.[1] Amended Complaint Exhibits B and C.

In the summer of 1986 the principals at Duling Optical decided to change the direction of their advertising campaign. Duling had previously been running a series of television commercials involving non-celebrity individuals who sat on the set and spoke directly to the audience without mu-

---

1. Under the Copyright Act of 1978 registration is not a condition to obtaining a copyright. Copyright protection automatically arises from the moment a work is created. A work is created when it is fixed in copy or phonorecord for the first time. 17 U.S.C. § 101. Failure to observe certain formalities such as copyright notice and registration can result in a loss of copyright or loss of certain available remedies, however. See 17 U.S.C. § 401(a) (general requirement of copyright notice).

Registration of a copyright action with the Copyright Office is a prerequisite to the filing of any infringement action. 17 U.S.C. § 411. Once registration occurs, however, an infringement action can be maintained for acts prior to the registration provided the action is not barred by the statute of limitations. 2 *Nimmer on Copyright* § 7.16[B] (1986). Here the amended complaint has cured the fact that the first action was filed prior to the registration of six of the seven commercials.

sic or props. Duling's advertising campaigns were coordinated by its marketing manager Michael Yager, who supervised the efforts of its advertiser 20/20. Yager worked closely with Connie Piepho, a 20/20 owner in deciding on the directions the new campaign should take.

Yager and Piepho decided to switch advertising strategies by using a celebrity spokesperson with "nice eyes" in its commercials. Yager Dep. 9, 20. From a list of nine celebrities Duling narrowed the choice to Shelton and one other actress. Yager Dep. at 26. The decision to employ Shelton was not finalized, however, until Yager had viewed a copy of plaintiff's copyrighted tape of Blore's "Deborah Daily–News" and showed it to Duling's president. Yager Dep. 29. 20/20 had specifically requested a copy of the tape from a talent agency and then delivered it to Yager. Yager Dep. at 27. Both Yager and Piepho admitted to making unauthorized copies of the Deborah Daily News tape. Yager Dep. at 130–33; Deposition of Connie Piepho 103. In a letter to the talent agency Duling stated that "[t]he commercials we will be producing are similar to the [Daily News commercials], which, by the way, were excellent." Affidavit of Earl Reiland, Exhibit A, Letter of Tom Kirpatrick to William Morris Agency (Kirpatrick Letter). The director chosen to create the Duling commercials featuring Shelton was given a copy of the unauthorized tape to watch and viewed it on the day of the shoot. Piepho Dep. 48, 72–73, 100–102.

The number of commercials involved in this litigation (seven Blore commercials and four Duling commercials) precludes indepth description of each one. All of the Blore commercials involved are approximately twenty-five to thirty seconds long and feature Shelton extolling the virtues of a newspaper and a radio station respectively. The Duling commercials are of similar length but involve eyewear products. Only two will be described below.[2] The Blore commercial features Shelton extolling a newspaper (the Daily News). The opening shot is a close-up of Shelton in which the word "Deborah" appears on the lower left of the screen. The remainder of the commercial consists of a series of rapid-edits of twenty close-ups of Shelton's face against a green background.[3] In each commercial she is wearing an unbuttoned white shirt with blue stripes. With each line of text the camera cuts to a new close-up of Shelton in a different pose, with a different hairstyle and a different expression. The script is as follows with each line accompanied by a different shot:

*Blore Daily News Script*
What do the Daily News and a hot bubble bath have
in common?
Me.
I just love them both.
Everybody knows about the Daily News' commitment
to the Valley
And its commitment to excellence.
There is another paper that says it covers the
Valley
But everybody knows
They're over the hill.
Can you imagine living in the Valley and not
reading the Daily News?
That's like wearing all new underwear and not
getting hit by a bus.
What a waste.
Daily
News.
Daily
And Sundays.
You
Ought to look into that.

The Duling commercial is thirty seconds long and contains fourteen different poses of Shelton. It also begins with a close-up

---

**2.** Because this action does not involve the textual aspects of the commercials, the actual scripts are of little import.

**3.** A viewing of the commercials is necessary to appreciate the nature of this case. The brief description which follows is necessarily abbreviated and is insufficient to provide the full flavor of the commercials.

and the words Deborah Shelton on the lower right of the screen. Most of the shots are close-ups but some are medium shots in which her upper body is also visible. She wears a blue-striped blouse that is alternatively unbuttoned and buttoned. With each shot she is featured in a new pose with a different pair of glasses or no glasses at all as well as a different hairstyle. The text of the representative Duling commercial is as follows:

There are some things in life that should take
more than an hour.
But making your glasses isn't one of them.
Duling Optical Super Store
Has thousands of designer frames
And contact lenses to choose from.
I can have my eyes examined
And have my new glasses and
Contact lenses in about an hour.
And they're guaranteed to be
Prescription perfect.
The Duling Optical Super Store
The one-stop shopping
That allows me more time for
Other things.

It is undisputed that the text and subject matter of the Duling commercials are completely different from those of the Blore commercials. Plaintiff contends that despite these differences the producers of the Duling commercials have substantially copied the expressive elements of the Blore commercials. In particular they allege substantial similarity in regards to editing, change of hairstyle, framing, collar position on blouse and use of a striped blouse, jewelry, tone of voice, raising of eyebrows and voice level. For their part defendants argue this suit is a frivolous attempt by plaintiffs to monopolize the use of a rapid-edit montage style involving closeups of Deborah Shelton despite the absence of any exclusive licensing agreement between Shelton and plaintiff. They further contend that neither the use of Shelton as the sole spokeswoman for a particular product, nor the use of rapid-edit close-ups are entitled to protection under either copyright, Lanham Act or unfair competition laws.

Defendants also move to dismiss the remaining counts of the complaint.

## DISCUSSION

### I. Copyright

#### A. Elements of Infringement

To establish a claim of copyright infringement plaintiff must prove both the ownership of a valid copyright and copying by the defendant. *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 120 (8th Cir. 1987); *Warner Bros., Inc. v. American Broadcasting Cos., Inc.,* 654 F.2d 204, 207 (2d Cir.1981); 3 *Nimmer on Copyright* (*Nimmer*) § 13.01 (1986). It is undisputed that plaintiff has valid copyrights for its commercials. Copying can be proved by a showing of access to the copyrighted material by the defendant and a substantial similarity between the protectible elements of the two works. *Hartman,* at 120; *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2778, 90 L.Ed.2d 721 (1986). Accordingly, a distinction must be drawn between non-infringing copying wherein the substantial similarities relate only to non-protectible elements, and infringing "illicit" copying where the substantial similarities relate to protectible elements. *Walker,* 784 F.2d at 48.

Here there is no question as to access since defendant Duling expressly indicated its intention to model its commercials after the Blore commercials and the Duling director viewed them on the day of the shoot. *See* Kirpatrick Letter; Piepho Dep. at 100–02. The issue is whether and to what extent the non-textual aspects of plaintiff's commercials (*i.e.,* everything except the words themselves) contain protectible elements and if so whether those elements have been infringed. It is defendants' position that as a matter of law plaintiff cannot prove copying because any non-textual similarities between the commercials involve non-protectible material therefore making summary judgment appropriate. *See Walker,* 784 F.2d at 48 (summary judgment in copyright action only appropriate if similarities concern only non-copyrightable ele-

ments or when no reasonable trier of fact could find works substantially similar).

## B. The Idea/Expression Dichotomy

■ The first axiom of copyright is that copyright protection covers only the expression of ideas and not ideas themselves. 17 U.S.C. § 102(b); *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). This principle is an accommodation between seeking to encourage individual creativity on the one hand and on the other seeking to permit the public to benefit from improvements to existing creations. *Reyher v. Children's Television Workshop,* 533 F.2d 87, 91 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed. 2d 588 (1976); *United States v. Bily,* 406 F.Supp. 726 (E.D.Pa.1975). Ideas themselves are non-copyrightable because they can only exist in the mind and thus cannot be the basis of a property interest. Hopkins, *Ideas, Their Time Has Come: An Argument and a Proposal for Copyrighting Ideas,* 21 Pub.Ent.Advert. & Allied Fields L.Q. 25, 26 (1982).

The second axiom of copyright is that the first axiom is more of an amorphous characterization than it is a principled guidepost. *See, e.g., Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.,* 575 F.2d 62, 65 (3d Cir.), *cert. denied,* 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193 (1978); (precision rarely possible); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960) (decisions necessarily ad hoc); 3 *Nimmer* § 13.03[A] at 13–21 (axiom is reformulation not solution of the problem). Despite the blurriness of the idea/expression dichotomy "it has been emphasized repeatedly that the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization." *Reyher,* 533 F.2d at 91. The issue before the Court is whether the non-textual elements, includ-ing the rapid-edit style and use of close-ups in the Blore commercials are non-copyrightable advertising themes or concepts or rather expressions of an idea entitled to copyright protection. If the non-textual elements are simply concepts then summary judgment in favor of the defendants is proper. If the non-textual elements are expressions of an idea entitled to copyright protection then the Court must determine whether the issue of substantial similarity can be resolved on the current record by summary judgment motion in favor of defendants.

## C. Protectible Expressive Elements of the Blore Commercials

■ Defendants first correctly note that plaintiff cannot copyright the use of Deborah Shelton in a commercial because they did not create her. *See* 17 U.S.C. § 102(a) ("[c]opyright protection subsists ... in original works of authorship"); *Franklin Mint,* 575 F.2d at 65 (fact that two artists used same subject matter did not prove either copying or infringement). Defendants argue that the Blore commercials merely represent the concept of rapid-edit close-up shots of a model and therefore those aspects of the commercials are not entitled to copyright protection. *See* 17 U.S.C. § 102(b) (copyright protection does not extend to ideas, systems or concepts). Defendants claim this lawsuit is an attempt to monopolize the right to use Shelton in television commercials in the absence of an exclusive licensing agreement to do so. Plaintiff on the other hand argues that the Blore commercials are artistic creations eligible for full protection under the copyright laws. It argues that the idea behind the commercials is the use of a one-on-one celebrity spokesperson to tout a particular product. According to plaintiff, the commercials themselves, which embody myriad creative and artistic choices, are the expression of that idea.[4]

---

**4.** Plaintiff has submitted the affidavit of Lloyd Peitzman, an expert in video production, who concludes that based on a comparison between one of the Duling and two of the Blore commercials that the Duling commercial is substantially similar to the two Blore commercials in sixteen different areas which include format, style, pacing, editing, choice of actress, range and tone of actress' voice, hairstyles and hairstyle changes, makeup and style of facial look, framing, and use of plain background. *See* Affidavit of Lloyd Peitzman, par. 8.

After careful consideration the Court concludes that the similarities between the commercials do involve protectible material. The Blore videos are audiovisual works as defined by 17 U.S.C. § 101:

"Audiovisual works" are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with the accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

The expressive aspects of audiovisual works, and of television in particular, necessarily include both images and sounds since without either there can be no communication and hence no expression. *See, e.g., Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 617 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982) (expressive aspects of video game included audio component and concrete details of visual presentation). Thus, the expressive aspects of the Blore commercials extend to the individual artistic [5] choices such as a particular montage style, camera angle, framing, hairstyle, jewelry, decor, makeup and background. These choices express the concept behind any given commercial and distinguish its images and sounds from the otherwise infinite universe of commercials which might have been made. *See*

*Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1168 (9th Cir.1977) (complexity and artistry of expression of an idea separate it from the idea itself). They cannot be divorced from the verbal script and deemed irrelevant to the total communicative impact of the medium. Indeed, defendants' position to the contrary reflects a radical departure from existing copyright law.

For example, copyright protection for photographs extends to the choice of subject matter and "such features as the photographer's selection of lighting, shading, positioning and timing." *Kisch v. Ammirati & Puris, Inc.*, 657 F.Supp. 380, 382 (S.D.N.Y.1987); 2 *Nimmer* § 2.08[E] at 2–111. Similar protection exists for movies. *See, e.g., Time Inc. v. Bernard Geis Associates*, 293 F.Supp. 130, 143 (S.D.N.Y.1968) (home movie films of Kennedy assassination were copyrightable because they embodied many elements of creativity including kind of camera (movies not snapshots), kind of film (color), kind of lens (telephoto), area covered, timing, and filming location); *see also* Circular R45 of the U.S. Copyright Office, Copyright Registration for Motion Pictures Including Video Recordings, 1, 5–6 (1980) (noting that concepts behind motion pictures are embodied in a number of different concrete forms of creative expression such as dialogue, dramatic action, camera work, visual effects, editing, music, and so forth). Thus contrary to defendants' suggestion, the specific artistic choices in-

---

Expert testimony on the issue of substantial similarity is admissible only to show similarities of ideas, and not in the expression of those ideas. *Hartman* at 120. Thus, the Peitzman affidavit is not relevant to the issue of whether an ordinary person would view the works as similar. (*See infra* at 679).

5. Defendants attempt to characterize the rapid-edit close-up style as a mere advertising gimmick unrelated to the expression of ideas. It is true that under early copyright law advertisements were denied copyright protection on the ground that they lacked artistic merit. *See, e.g., J.L. Mott Iron Works v. Clow*, 82 F. 316 (7th Cir.1897). This doctrine was rejected in *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251, 23 S.Ct. 298, 300, 47 L.Ed. 460 (1903). Today it is uniformly accepted that advertisements are protected by copyright law. *See, e.g., Jacobs v. Robitaille*, 406 F.Supp. 1145, 1149

(D.N.H.1976) (fact that advertisement was not the product of "creative genius" did not affect copyrightability); 1 *Nimmer* § 2.08[G] at 2–118–120. Whether characterized as an advertising gimmick or "Madison Avenue" kitsch, the choice of a particular editing style is nonetheless an expressive artistic element for the purposes of copyright law.

Defendants also suggest any similarities between the two series of commercials are "scenes a faire," that is "stock scenes or scenes that flowed necessarily from common unprotectable ideas." *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983). Given the myriad artistic choices available to the creators of the Shelton commercials this argument must be rejected. The mere fact that Duling chose to employ Shelton in its commercials did not dictate that the end product so closely resemble the Blore commercials.

cluding the rapid-edit style and use of close-ups inherent in the visual style and tone of the Blore commercials are protected by the copyright laws. Whether one characterizes the idea behind the commercials as that of a one-on-one celebrity spokesperson (Shelton) puffing a particular product as Blore urges, or simply the idea that Shelton is a beautiful actress whatever she happens to be selling, the commercials themselves are expressions of those ideas.[6] It is that expression reflecting the unique perspective of individual creators which is entitled to protection. *See Jewelers' Circular Publishing Co. v. Keystone Publishing Co.*, 274 F. 932, 934 (S.D.N.Y.1921) (every photograph no matter how simple is influenced by the individual personality of the photographer).

None of the cases cited by defendants are inconsistent with this result. Defendants rely heavily on *Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*, 452 F.Supp. 429 (W.D.N.Y.1978) involving litigation over two sets of television commercials for light beer in which both sets stressed a tastes great/less filling theme. In *Miller* each series of commercials involved tavern settings in which celebrities would begin by touting the beer but ultimately degenerate into a tastes great/less filling argument. The plot, setting and characters in the commercials were quite similar. The issue before the *Miller* court was whether those similarities, *viz.*, arm wrestling, an argument about whether light beer tastes great or was less filling, the recitation of sales messages through poetry and brothers speaking in unison, were ideas or expressions of ideas. 452 F.Supp. at 440. The plaintiff argued that the idea behind their beer commercials was tastes great/less filling and that the settings and plots were all means of expressing that idea. Defendant claimed the idea behind the commercials

was the use of famous personalities in absurd situations and argued that characterizing the plot and settings as expressions of that idea would "virtually foreclose the use of these commonplace and unoriginal advertising techniques in beer commercials." 452 F.Supp. at 440. The court agreed with the defendants on the ground that the scenarios involved (arm wrestling, argument in a tavern, recitation of poetry and siblings speaking in unison were unoriginal ideas or themes that did not relate to expressing the taste great/less filling theme). 452 F.Supp. at 441.

The *Miller* case is only tangentially relevant to the case at bar. The only similarity between the two cases is that they both involve litigation over television commercials. The copyright issue in *Miller*, however, centered on the literary rather than the audiovisual aspects of the commercials, *viz.* the recurrence of certain archetypical similarities in plot, setting and character development. These basic literary elements are generally considered matters of public domain and not entitled to copyright protection. *See, e.g., Walker*, 784 F.2d at 50 (scenes involving foot chases, morale problems of police officers in the Bronx, and depiction of Irish police officers as drinkers were standard lore in police fiction and not entitled to copyright protection); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 122 (2d Cir.1930), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931) (structural and thematic elements of plaintiff's play "Abie's Irish Rose" were not entitled to copyright protection). Here, in contrast, the infringement issue involves style not substance, images and tone not plots or characters. These stylistic devices go to the heart of copyright protection. *See Steinberg v. Columbia Pictures Industries, Inc.*, 663 F.Supp. 706, 712 (S.D.N.Y.1987).

---

**6.** Analysis of the "idea" behind the expressive images of television commercials is necessarily complex in a context where, as Marshall McLuhan has noted, "The medium is the message." M. McLuhan, *Understanding Media: The Extensions of Man* Ch. 1 (1964). The ideas behind television images often operate at a subliminal or pre-conscious level and are not readily subject to verbal characterization. *Cf.* Fine, *A Case for Federal Protection of Television Formats: Testing the Limits of "Expression"*, 17 PAC.L.J. 49–50 (1985) (noting that clinical literature suggests television consumer audience satisfaction is closely linked to subliminal identification with carefully manipulated "program elements").

The decision in *Gero v. Seven–Up Co.*, 535 F.Supp. 212 (E.D.N.Y.), *aff'd. mem.*, 714 F.2d 113 (2d Cir.1982) is also inapposite. *Gero* was an infringement action brought by an artist against Seven–Up and its distributors alleging the unlawful advertising use of his copyrighted drawing featuring a six-armed Indian goddess surrounded by Seven–Up bottles. The court granted summary judgment for defendant because the plaintiff was unable to substantiate the allegation that Seven–Up had ever created or aired a commercial which in fact infringed his drawing other than through twenty-seven affidavits of individuals claiming to have seen a commercial with the same subject matter as the plaintiff's drawing. *Gero*, 535 F.Supp. at 217. The court concluded this general allegation was insufficient to support an infringement action and concluded that the defendants, having seen plaintiff's concept of a six-armed goddess surrounded by Seven–Up bottles, were free to create their own version of it. *Gero*, 535 F.Supp. at 216–17.

Defendants argue that they are similarly entitled to use the concept of the rapid-edit close-up style of the Blore commercials. Upon closer examination, however, the *Gero* case is inapposite. The *Gero* court granted summary judgment because the plaintiff was unable to specify in anything other than the most general terms how defendants had infringed his drawing:

> Each and every affidavit in the group alleging to have seen the infringing commercial described the commercial as having, "the identical subject matter" as plaintiff's artwork.... *Not one of these 27 affiants observed the figure with sufficient thoroughness to include in their description the figure's attire, position, or even its gender; not one describes objects in the background or foreground of the scene....* Not one provides this court with anything resembling a full and accurate description of the alleged infringing commercial upon which a jury could base a finding of substantial similarity with the plaintiff's copyrighted artwork.

*Gero*, 535 F.Supp. at 217 (emphasis added). *Gero* simply stands for the proposition that

infringement cannot be decided in a vacuum. Here by contrast the Court has both series of works and a sufficiently concrete appreciation of their details and nuances to determine whether a real possibility of infringement exists.

### D. Substantial Similarity Between the Blore and Duling Commercials

Because the Blore commercials contain many expressive elements entitled to copyright protection the Court must address the issue of whether the Duling commercials are substantially similar to the Blore commercials. This is one of the most difficult questions in all of copyright law because of the difficult line drawing required. 3 *Nimmer* § 13.03[A] at 13–20.

In *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987), the United States Court of Appeals for the Eighth Circuit established a two-step extrinsic/intrinsic analysis for substantial similarity. First, the Court must assess similarities of ideas by comparing objective similarities in the details of the works, a so-called extrinsic analysis. Expert testimony is admissible in making this comparison. *Hartman*, at 120. If there are substantial similarities in ideas, the Court must then compare similarity of expression based on the response of the ordinary reasonable person. Expert testimony is not admissible on this issue. *Hartman*, at 120. Judge Learned Hand phrased the issue as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960).

The Court finds that based on a comparison of the objective details of the two series of commercials there is a substantial similarity of ideas between the two commercials: the use of the television medium to present a thirty-second commercial using Deborah Shelton to promote a product. Applying the intrinsic test to the nontextual elements of thirty-second television commercials is extremely difficult. *See Miller*, 452 F.Supp. at 441 (brevity of com-

mercials precluded resort to detailed comparisons).

The essential inquiry here is whether the total concept and feel of the two series of commercials are substantially similar. *Hartman,* at 120; *Atari Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 620 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982) (video game which captured "total concept and feel" of plaintiff's video game was substantially similar to plaintiff's game). Defendants stress several differences between the two series of commercials. They emphasize more rapid pace and greater number of edits in the Blore commercials in contrast to the fewer edits, more deliberate, business-like tone of the Duling commercials. They also contend that none of the shots in the Blore commercials are precisely duplicated in the Duling commercials and emphasize differences in color of the background and the clothing worn by Shelton. As plaintiff notes, however, it is the presence of substantial similarities rather than differences which determines whether infringement exists. 3 *Nimmer* § 13.03[B] at 13–41–42; *Atari,* 672 F.2d at 618. The existence of differences will not negate infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential within the total context of plaintiff's work. 3 *Nimmer* § 13.03[B] at 13–43; *Durham Industries Inc. v. Tomy Corp.,* 630 F.2d 905, 913 n. 11 (2d Cir.1980).

The differences noted by defendant are relatively unimportant in light of the substantial similarity between the overall concept and feel of the two series of commercials. Television commercials as the United States Court of Appeals for the Seventh Circuit noted with respect to video games, "unlike an artist's painting or even other audiovisual works, appeal to an audience that is fairly undiscriminating insofar as their concern about more subtle differences in artistic expression." *Atari,* 672 F.2d at 619. The ordinary reasonable person would simply fail to perceive these differences and would conclude the aesthetic appeal of the commercials as the same. *See, e.g., Kisch,* 657 F.Supp. at 383 (denying defendant's summary judgment motion despite fact that one photograph was in color and the other was in black and white, and one featured woman and the other a man; fact that both were taken in same corner of New York nightclub featuring same striking mural, fact that figures in both pictures were seated and holding musical instruments, and similarities of camera position, angle and lighting created issue for trier of fact). *Gross v. Seligman,* 212 F. 930, 931 (2d Cir.1914) (fact that background of photographs were not identical, that in one the model was sedate and in the other she was smiling, and the model was two years older in the second photograph did not constitute sufficiently significant differences to preclude finding of substantial similarity).

Therefore, based upon the foregoing, the Court will deny defendants' motion for summary judgment on plaintiff's copyright claim.

## II. Lanham Act Claim

 Count II of the complaint alleges a violation of section 43(a) of the Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1125(a). That section provides in relevant part:

Any person who shall affix, apply, or annex, or use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

Three elements must be proved in order to establish a violation of section 43(a): (1) that the product configuration of two competing products is confusingly similar; (2) that the appropriated features of the first product are non-functional; and (3) that the

product configuration has obtained secondary meaning.[7] *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1445 (Fed. Cir.1984); *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1217 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).

Defendants move the Court for dismissal of plaintiff's Lanham Act claim. They argue that no reasonable consumer could be confused about whether Blore's customers are associated with Duling because the products advertised, radio and newspapers on the one hand and eyewear on the other, are not in competition with each other and could not be confused by any reasonable consumer. Plaintiff responds that in fact a strong likelihood of confusion exists to the extent that one set of commercials will reinforce consumer recollection of the other parties' product.

In contrast to defendants' *ipse dixit*, plaintiff has provided the Court with two affidavits in support of its argument. The first is that of William McEleveen, president of Audobon Broadcasting which is the owner of the radio station WNOK. WNOK broadcasts on AM and FM frequencies to listeners in Columbia, South Carolina and surrounding areas. McEleveen Aff. par. 1. McEleveen alleges WNOK spent more than $125,000 in developing two Blore television commercials featuring Deborah Shelton to promote its station. McEleveen Aff. par. 2, 3. He further states that the commercials were very well received until Duling in 1987 began airing its Deborah Shelton commercials on the same local television stations which aired the WNOK commercials. He claims that shortly thereafter a number of individuals in the Columbia and South Carolina radio and television markets asked him why WNOK was letting Duling use the same commercial to advertise its business. McEleveen Aff. par. 4. Subsequently WNOK decided the Duling commercial was so similar that further broadcast of its commercials featuring Shelton would create negative publicity for the station. Accordingly, WNOK stopped airing the Shelton commercials and spent $18,000 developing a new advertising campaign. McEleveen Aff. par. 5. Plaintiff has also submitted the affidavit of a video expert, Lloyd Peitzman, who asserts that the Blore and Duling commercials are so similar visually, stylistically and with respect to format that many people would be likely to confuse them if they were aired in the same market. Peitzman Declaration par. 9.

The Eighth Circuit has established a six-factor test to determine whether likelihood of confusion exists: (1) the strength of the owner's mark; (2) the similarity between the owner's and alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost, and conditions of purchase. *Co–Rect Products, Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1330 (8th Cir.1985), *citing Squirtco v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980).

Defendants rely on *Dr. Pepper Co. v. Sambo's Restaurants, Inc.*, 517 F.Supp. 1202 (N.D.Tex.1981) and *Scott v. Mego International, Inc.*, 519 F.Supp. 1118 (D.Minn.1981) for the proposition that where the goods in question are not in competition with each other there can be no likelihood of confusion under the Lanham Act. Neither of the cases cited by defendants are persuasive authority for its position. *Sambo's* involved litigation over two television commercials one promoting a soft drink and the other a restaurant. In dismissing plaintiff's trademark claim, the *Sambo's* court relied on a market survey which showed that "[a]bsolutely no one believed that the [defendant's] commercial is an attempt to sell a soft drink in competition with Plaintiff or that it is a commercial for anyone other than [defendant]." *Sambo's*, 517 F.Supp. at 1205. Here, in con-

---

7. Functionality refers to whether a given product feature serves any purpose other than serving as a trademark. Secondary meaning refers to the public's association of a mark or symbol with a particular brand of goods due to exclusive use and advertising by one person. *Fruehauf*, 536 F.2d at 1217, 1219.

trast plaintiff has submitted evidence that consumer confusion has resulted over the sponsorship of the Duling commercials. *See* McEleveen Aff. par. 4.

■■■ *Mego* involved litigation between the holder of a trademark for military miniatures entitled Micro Nauts, primarily of interest to "wargaming" hobbyists, and the manufacturer and distributor of children's toys marketed under the name Micronauts. *Mego,* 519 F.Supp. at 1121–24. In dismissing plaintiff's trademark claims the Court, among other factors, relied on the fact that apart from the similarities in the names, the products were not in competition, appealed to largely distinct and different consumer groups as well as the fact that a consumer market survey showed almost no likelihood of confusion. *Mego,* 519 F.Supp. at 1129–31. Contrary to defendants' contention, *Mego* does not stand for the proposition that direct competition between products is an essential element of a Lanham Act claim. In essence, the *Mego* plaintiff's claim failed because apart from the similarity between the product names there was no other resemblance between the products. That is not the case here. Indeed, under the Eighth Circuit test, it is clear that the degree to which products compete with each other is but one element to be considered and "infringement may be found in the absence of direct competition." *Squirtco,* 628 F.2d at 1091 *citing HMH Publishing Co. v. Turbyfill,* 330 F.Supp. 830 (M.D.Fla.1971); *see also Chemical Corp. v. Anheuser–Busch, Inc.,* 306 F.2d 433, 437–38 (5th Cir.1962), *cert. denied,* 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963) (similarities between beer product slogan and slogan for combination pesticide and floorwax stated claim under Lanham Act).

■■■ Thus, application of the *Co–Rect* factors indicates that defendants' motion is premature because an issue of material fact exists with regard to the likelihood of actual confusion between the Blore and Duling commercials. Resemblance between the two products must be based on a complete examination including visual impression and sound. *Squirtco,* 628 F.2d at

1091. Here, the Blore and Duling commercials are visually similar. Given the unique nature of the commercials, the cost of developing them, the fact that they are substantially similar, and the so far uncontroverted evidence offered by plaintiff that defendants' commercials have engendered confusion and sabotaged the demonstrated effectiveness of the Blore commercials, summary judgment on the Lanham Act claim is inappropriate. *See Hartman,* at 120 (in absence of finding of substantial similarity under copyright law there was little basis for asserting consumer confusion in Lanham Act claim).

### III. State Unfair Competition Claims

The defendants also move the Court for dismissal of plaintiff's state unfair competition claims under the Minnesota Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43, *et seq.* (Count III); Minnesota Unlawful Trade Practice Act, Minn.Stat. §§ 325D.09, *et seq.* (Count IV) and the common law (Count V). Defendants argue that all the state unfair competition claims except those alleging the tort of "passing off" are preempted by federal law. *See Warner Bros. Inc. v. American Broadcasting Companies, Inc.,* 720 F.2d 231, 247 (2d Cir.1983); *Litton Systems Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1447–49 (Fed.Cir.1984). Defendants further contend plaintiff cannot make out a claim of "passing off" because the Duling commercials cannot be construed as trying to sell newspapers or radio stations. Plaintiff apparently concedes these issues since it has not responded to them either in its brief or at oral argument. Accordingly, defendants' motion to dismiss the state unfair competition claims will be granted.

Based on the foregoing, and upon review of all the documents, exhibits, records and arguments of counsel,

IT IS ORDERED that

1. defendants' motion for summary judgment on plaintiff's copyright and Lanham Act claims is denied.

2. defendants' motion for summary judgment on plaintiff's state unfair compe-

tition claims (Counts III, IV and V of the amended complaint) is granted.